OPINION
Defendant-appellant C.J. Mahan Construction Company ("Mahan"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to L.B. Trucking Co., Inc. ("L.B. Trucking"), on Mahan's counterclaim.
According to L.B. Trucking's initial complaint, it entered into purchase order contracts dated July 1, 1999 and December 20, 1999, with Mahan, a general contractor on two road construction projects. Under those contracts, L.B. Trucking agreed to provide construction labor and materials for an Ohio Department of Transportation ("ODOT") project commonly known as the "I-670 project." In addition, L.B. Trucking entered into an oral contract with Mahan to provide labor and materials for another ODOT project commonly referred as the "Rt. 315 project." In its complaint, L.B. Trucking alleged Mahan breached the contracts by failing to timely pay L.B. Trucking for the work it performed.
On January 25, 2001, L.B. Trucking filed an amended complaint alleging (1) Mahan failed to timely pay L.B. Trucking for work performed under the purchase order contracts and the oral contract, (2) Mahan failed to promptly pay L.B. Trucking from funds Mahan received from ODOT, so that L.B. Trucking was entitled to both payments of principal and interest, and reasonable attorney fees pursuant to Ohio's Prompt Payment Act, R.C.4113.61, and (3) L.B. Trucking served affidavits of lien and an amended affidavit of lien upon ODOT, thereby requiring ODOT to hold project funds as a stakeholder in, at least, the lien amounts. Later, the trial court granted L.B. Trucking leave to file a second amended complaint that joined Safeco Insurance Company, surety for Mahan, as a defendant.
Mahan answered L.B. Trucking's amended complaint and counterclaimed that L.B. Trucking billed Mahan for materials it did not deliver to the "I-670 project" or the "Rt. 315 project," L.B. Trucking breached implied duties of good faith and fair dealing by not informing Mahan of a mistake in a revised purchase order, L.B. Trucking breached its contracts when it billed Mahan for the wrong price of shot rock materials, and L.B. Trucking has been unjustly enriched. According to Mahan's counterclaim, it overpaid L.B. Trucking $.50 per ton for the shot rock, and thereby sustained damages of $96,043.53, plus interest.
On June 21, 2001, in an agreed entry, L.B. Trucking's complaint, as amended, was dismissed with prejudice. L.B. Trucking also waived all bond claims. Additionally, Mahan dismissed with prejudice all counterclaims, except those claims that related to the allegedly mistaken unit price for shot rock. Defendant ODOT was dismissed and ODOT released to Mahan all funds that were detained pursuant to L.B. Trucking's liens on the "I-670 project" and the "Rt. 315 project."
On July 25, 2001, L.B. Trucking moved for summary judgment on Mahan's counterclaim, and the trial court granted the motion. Mahan appeals, assigning the following errors:
"FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE REMAINS GENUINE ISSUES OF MATERIAL FACTS THAT MUST BE PRESERVED FOR TRIAL.
"SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT SINCE EVIDENTIARY CONFLICTS EXIST ON GENUINE ISSUES OF MATERIAL FACT WHICH RAISES QUESTIONS REGARDING LB'S CREDIBILITY, THEREBY PRECLUDING SUMMARY JUDGMENT IN LB'S FAVOR.
"THIRD ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT SINCE IT CONSTRUED THE CIV.R. 56(C) EVIDENCE AGAINST MAHAN (NON-MOVING PARTY) IN ORDER TO DETERMINE WHETHER REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION.
"FOURTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED WHEN RULING ON MAHAN'S CLAIM OF MUTUAL MISTAKE AFTER ERRONEOUSLY FINDING THAT MAHAN CLAIMED LB MADE A MISTAKE WHEN IT ISSUED AND REVISED ITS INVOICE ON DECEMBER 27, 1999.
"FIFTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED WHEN RULING ON MAHAN'S CLAIM OF MUTUAL MISTAKE AFTER ERRONEOUSLY FINDING THAT THERE IS NO EVIDENCE, AFTER THE PURCHASE AGREEMENT WAS ENTERED INTO, LB BELIEVED THE PRICE WAS OTHER THAN $3.50 PER TON OF MATERIAL.
"SIXTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT WHEN IT DID NOT RULE ON MAHAN'S CLAIM THAT LB BREACHED THE DECEMBER 7, 1999 CONTRACT AND ITS IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING.
"SEVENTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT WHEN IT FOUND THAT MAHAN HAS FAILED TO DEMONSTRATE ANY FACT THAT WOULD LEAD A REASONABLE JURY TO CONCLUDE LB'S BEHAVIOR WAS FRAUDULENT.
"EIGHTH ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN GRANTING LB'S MOTION FOR SUMMARY JUDGMENT WHEN IT ALLOCATED THE RISK OF THE MISTAKE TO MAHAN."
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293; Vahila at 430; Civ.R. 56(E).
"It is well established that the construction of contracts is a matter of law to be resolved by the court. * * * `Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo.' " Lovewell v. Physicians Ins. Co. of Ohio (1997),79 Ohio St.3d 143, 144. (Citations omitted.) "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. * * * `The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.' " Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361. (Citations omitted.) See, also, Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus.
"To prove the existence of a contract, a party must establish the essential elements of a contract: an offer, an acceptance, a meeting of the minds, an exchange of consideration, and certainty as to the essential terms of the contract. * * * `In order to declare the existence of a contract, both parties to the contract must consent to its terms * * * there must be a meeting of the minds of both parties * * * and the contract must be definite and certain.' * * * In order to prove the existence of a written contract, the essential elements of the contract must be part of a writing, or part of multiple writings that are part of the same contractual transaction." Juhasz v. Costanzo (2001),144 Ohio App.3d 756, 762. (Citations omitted.)
Here, Mahan contends it received a written offer from L.B. Trucking dated June 25, 1999, to broker rip rap stone from National Lime Stone Company ("National"), with no mark up, for the "I-670 project" if Mahan agreed to pay L.B. Trucking $6.30 per ton for hauling the materials. On July 1, 1999, Mahan issued a purchase order mirroring L.B. Trucking's written offer.
Mahan subsequently encountered changed conditions at the work site that required ODOT to issue a change order for the purchase and placement of shot rock and additional rock channel protection materials. Mahan received several offers to meet the requirements of the change order. Charles C. Wooster, Vice President of Mahan, spoke with Lynda C. Bryant of L.B. Trucking about hauling shot rock to the "I-670 project" site. Wooster orally accepted L.B. Trucking's offer to broker the shot rock at a price of $3 per ton with (1) $.50 per ton discount if payment was received within 15 days of the invoice date, and (2) no additional markup if Mahan agreed to pay the original hauling price of $6.30 per ton. L.B. Trucking confirmed the oral agreement with a written quotation dated December 7, 1999.
L.B. Trucking's December 7 price quotation provided the following:
"I am pleased to quote you shot rock prices for the emergency I-670 project.
"$3.00 per ton for material
"$ .50 per ton discount if paid within 15 days of invoice date
"$6.30 per ton haul rate
"Thank you for the opportunity to do business with your company.
"Sincerely, Lynda C. Bryant, President"
But, see, L.B. Trucking's Response to First Set of Combined Discovery Requests, Request for Admission No. 3, 5 ("admit[ing] that the written quote of 12-7-99 was offered but deny[ing] that the net delivered price per ton was supposed to be $8.80 after discount"). See, also, Response to First Set of Combined Discovery Requests, Answer to Interrogatory No. 7, 5 ("The reference to $3.00 per ton for material should have said $3.50 per ton before discount. Instead it erroneously reflected the intended price after discount"). (Emphasis sic.)
The day after submitting the December 7 price quotation, L.B. Trucking began hauling shot rock to the work site, and Mahan accepted it. On December 20, 1999, L.B. Trucking sent a corrected invoice with cover sheet via facsimile transmission to Mahan which, consistent with the December 7 price quotation, noted that "$9.30 is the price for the emergency 670 project."
The same day Jeff Lawson, who had been instructed by Wooster to revise Mahan's purchase order in response to L.B. Trucking's oral agreement and written price quotation of December 7, 1999, executed a revised purchase order. The revised purchase order listed the unit price for shot rock as $3.50, not $3 as indicated in L.B. Trucking's written price quotation of December 7, 1999. Later, on December 27, 1999, L.B. Trucking revised its previously corrected invoice from $9.30 per unit to $9.80 per unit, apparently reflecting an increase in the price of shot rock from $3 per ton to $3.50 per ton in response to Mahan's purchase order.
" `Typically, a price quotation is considered an invitation for an offer, rather than an offer to form a binding contract.' * * * [A] buyer's purchase agreement submitted in response to a price quotation is usually deemed the offer." Dyno Constr. Co. v. McWane, Inc. (C.A.6, 1999), 198 F.3d 567, 572 (Citations omitted.) See, also, TLG Electronics, Inc. v. Newcome Corp. (Mar. 5, 2002), Franklin App. No. 01AP-821. "However, a price quotation may suffice for an offer if it is sufficiently detailed and it `reasonably appear[s] from the price quotation that assent to that quotation is all that is needed to ripen the offer into a contract.' " Dyno Constr. Co., quoting Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc., of Illinois (N.D.Ill. 1986), 635 F. Supp. 1281, 1284.
In its decision and entry granting L.B. Trucking's motion for summary judgment, the trial court found "construing the evidence most strongly in favor of the non-moving party, that reasonable minds could come to but one conclusion: the purchase order signed by Jeff Lawson on December 20, 1999 which priced the shot rock at $3.50 was the complete agreement of the parties." (Decision, 8.) The facts, however, on which the trial court based its decision are disputed.
According to Mahan, its revised purchase order was intended to confirm the parties' oral agreement and L.B. Trucking's written price quotation of December 7, 1999. However, the revised purchase order inadvertently listed shot rock at a higher price than the published price in L.B. Trucking's written quotation. Mahan contends a mistake on the part of its employee explains the discrepancy between the parties' oral agreement and L.B. Trucking's December 20 invoice on the one hand, and Mahan's purchase order on the other.
By contrast, and notwithstanding its written price quotation, L.B. Trucking contends (1) it had no oral agreement with Mahan, and (2) its written price quotation did not unambiguously reflect its intended pricing scheme. L.B. Trucking asserts its price quotation was simply an invitation to Mahan to submit an offer. Mahan's purchase order was that offer, and L.B. Trucking accepted it with its subsequent corresponding invoices.
Here, if the trier-of-fact accepts L.B. Trucking's factual premise, it properly could find for L.B. Trucking. On the other hand, if the trier-of-fact accepts Mahan's evidence and concludes an oral contract was formed between Mahan and L.B. Trucking, as confirmed by L.B. Trucking's December 7 price quotation, then additional issues of mutual or unilateral mistake arise.
"Mutual mistake is the mistake of all parties to the contract. Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties." Weiner v. Kopp (June 25, 1997), Hamilton App. No. C-960611, quoting Wagner v. Nat'l Fire Ins. Co. (1937), 132 Ohio St. 405, 412. See, also, Shank v. Porter (Mar. 14, 2002), Franklin App. No. 01AP-838; Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1) (determining a contract may be voidable by adversely affected party where there is a mistake of both parties as to a basic assumption that has a material effect on the agreed exchange of performances, unless adversely affected party bears the risk of the mistake); Reilley v. Richards (1994), 69 Ohio St.3d 352, 353, reconsideration denied, 69 Ohio St.3d 1483; Music v. Sash Storm, Inc. (Mar. 28, 2002), Allen App. No. 1-01-142 ("Reformation of a contract based on mutual mistake is proper when the parties made the same mistake and understood the contract as the party seeking reformation alleges").
Proof of mutual mistake must be by clear and convincing evidence by the party requesting reformation. Weiner, supra; see, also, Frate v. Rimenik (1926), 115 Ohio St. 11, syllabus; Stewart v. Gordon (1899),60 Ohio St. 170, paragraph one of the syllabus. See, also, Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus (defining clear and convincing evidence). Nevertheless, "[n]o reformation of an instrument can be made that does not conform to the intention of both parties; the court cannot, by reformation, make a new contract." Stewart at 170, paragraph two of the syllabus.
"A unilateral mistake occurs when only one party has an erroneous belief as to the facts. (In a sense, of course, even in a case of unilateral mistake, both parties are mistaken: one is mistaken as to some fact and the other is mistaken in thinking that the first party is not mistaken)." 2 Farnsworth on Contracts (2 Ed. 1998) 585-586, Section 9.4. See, also, Restatement of the Law 2d, Contracts (1981) 394, Section 153; Marshall v. Beach (2001), 143 Ohio App.3d 432, 437, quoting Gen. Tire, Inc. v. Mehlfeldt (1997), 118 Ohio App.3d 109, 115, appeal not allowed,79 Ohio St.3d 1449 ("A unilateral mistake generally `occurs when one party recognizes the true effect of an agreement while the other does not' ").
"Generally, a contract may not be reformed in the case of a unilateral mistake. * * * However, where the mistake occurred due to a drafting error by one party and the other party knew of the error and took advantage of it, the trial court may reform the contract. * * * Reformation is appropriate if one party believes that a contract correctly integrates the agreement and the other party is aware that it does not, even though the mistake was not mutual." Galehouse Constr. Co., Inc. v. Winkler (1998), 128 Ohio App.3d 300, 303. (Citations omitted.) But, see, Kruppa v. All Souls Cemetery of the Diocese of Youngstown (Feb. 22, 2002), Trumbull App. No. 2001-T-0029, quoting Midwest Mut. Ins. Co. v. Lightning Rod Mut. Ins. Co. (Mar. 15, 1994), Belmont App. No. 92-B-53 ("[t]here may be recission for unilateral mistake if the position of the parties has not changed in such a way that they cannot be restored to their original rights"); Marshall at 437, citing Convenient Food Mart, Inc. v. Con. Inc., No. 3-007 (Sept. 30, 1996), Lake App. No. 95-L-093 ("While [a unilateral mistake] may provide the grounds for recission of an otherwise valid contract, it is well established in Ohio that relief for a unilateral mistake of material fact will not be provided where such mistake is the result of the negligence of the party seeking relief"). (Emphasis sic.)
Here, the divergent factual scenarios the parties submitted, in conjunction with the discontinuity in shot rock pricing between L.B. Trucking's written December 7 price quotation and Mahan's revised purchase order, raise genuine issues of material fact concerning a meeting of the minds between the parties, the pricing terms the parties agreed to in forming their contract, if any, and the existence of mutual or unilateral mistake, and make summary judgment inappropriate. Because the trial court erred in granting summary judgment in favor of L.B. Trucking, Mahan's first assignment of error is sustained, rendering the remaining assignments of error moot. The judgment of the trial court is reversed and this case is remanded to that court for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
TYACK, P.J., and DESHLER, J., concur.