**INDEPENDENT DIRECTORY CORPORATION,**
**Plaintiff-Appellant, v. VANDENBROCK, Individually, d. b. a.**
**General Engineering Service, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 2049. Decided January 5, 1950.

Shaman, Winer & Shulman, A. Paul Ziegler, of Counsel, Dayton, for plaintiff-appellant.

Scharrer, Scharrer & Hanaghan, Ralph Hanaghan, of Counsel, Dayton, for defendant-appellee.

314

**OPINION**

By HORNBECK, J:

The appeal is from a judgment of the Municipal Court of Dayton, which "finds for the defendant, and against the plaintiff, and finds that the allegations set forth in the Statement of Claim were not sustained by evidence, as provided by law" and dismissing the Statement of Claim.

Performance of the contract on the part of the plaintiff is established, signature of defendant is admitted, as is the refusal to pay the contract price for the advertising.

At the inception of the trial counsel for defendant dictated his answer in the record which consisted of three defenses: (1) A general denial; (2) No meetings of the minds of the parties to the contract; (3) The contract was obtained by means of trickery, artifice and fraud. The judgment is predicated on the establishment of the second defense.

Six errors are assigned to the judgment, the second, third and fifth of which are, without discussion, overruled. They are, (2) Errors in the admission of testimony; (3) Errors in reserving decision on certain objections made by counsel for plaintiff; (5) That "the court was influenced by a feeling of prejudice and bias which was instilled by a local business bureau." The errors presented which we consider are that the judgment is not supported by and is contrary to the evidence.

Although the trial judge by his opinion finds that no fraud was practiced by the plaintiff, this finding is not carried into the journal entry. We, therefore, give some consideration to this question of fraud because the trial judge in his opinion concluded that there was artifice and deception practiced by the plaintiff although the court did not characterize it as fraud.

The defendant first states without qualification that he "did not read the form before signing and did not know that the form called for advertising." Later he said,

"The form is almost a duplicate of the other copy form so I figured I was signing a copy, authorizing this advertisement for the paper that I had signed up for and I figured I was merely okaying this copy. I didn't read the entire thing. I saw Industrial Directories, Chicago, Midwest and Central States and I just signed it, thinking I was okaying the copy that they had sent me. The reason I didn't question it was that I had asked for a copy of this to to be returned to me. I had received two of these and had okayed them and everything was fine. I received the third one and I thought it was just another one and I signed the thing and then I get the

fourth one and I immediately knew something was wrong but I had no copy of anything to check with."

It appears that defendant had placed one ad each with Industry Directory Publishers, Philadelphia and Detroit, and Bell Publishers at New York. When the form of contract of plaintiff came to the defendant he had theretofore received two copies of his ad for okay from two of the publishers with which he had placed it. Which publishers had sent the ad to him does not appear. Neither does the form of the contract which defendant signed with the other publishers appear.

The plaintiff in its form had taken a copy of one of the ads of defendant from one of the other publications, pasted it on the form of contract tendered defendant and mailed it to him as a part of the solicitation for his business. That this procedure is commonly followed by many leading publishers is testified to and not denied. The contract under consideration was negotiated and consummated entirely by mail. All of its terms are written. Had the defendant read the contract which he signed, this is what he would have found, not in small type but in average size type, easily readable:

### COPY AND AUTHORIZATION FORM
Must Be Signed By Firm Member or Authorized Agent

Attached copy appears in another publication and this form is not a renewal or proof but if signed and returned is an authorization to publish an advertisement in Our Directory. If further information is required, please write.

Cost for One Year _____ Sixty Dollars
In Space of _____ One Half Inch S. C.
Classification _____ Tools

Then follows the copy of an ad which defendant published in three other directories.

### SIGN AND RETURN THIS ORDER FORM
To Insert Representation In Next Issue of This Directory. Independent Directory Corp., Publishers

You are hereby authorized to insert representation for us, using wording or copy similar to attached adv. in the next annual issue of your Classified Industrial Directory distributed to 40,000 Manufacturers & Industrial Buyers in the Midwest & Central States and bill us for same on publication.

If there is artifice, trickery or fraud it must be found in the form of the contract. It is fair to say, that the one thing on the contract form which misled the defendant was the use of the copy of the advertisement which he had placed with the Directories other than the plaintiff. As to the use of this copy, the defendant, had he read the form, would have seen the purpose for which this ad was used as follows:

"Attached copy appears in **another publication** and this form is not a renewal or **proof** but **if signed and returned** is an **authorization** to **publish** an **advertisement in Our Directory.**" (Emphasis ours.)

The language is plain and simple as possible to make it. The defendant was told, if he had read what was placed before him, that the plaintiff also wanted to print an ad in form and content just as was being printed and carried in other publications from one of which the ad had been clipped.

Much is said in the briefs about the use of the word "Industrial" throughout plaintiff's contract, and that it was confusing because it was also a part of the title of two of the companies with which defendant had placed his ad. The word "Industrial" in plaintiff's contract was used as a part of the general term "Classified Industrial Telephone Directories." All four of the companies seeking the defendant's business were publishers of such directories. How many more there are in the United States does not appear in this record. The name of the plaintiff company, boxed plainly, appears at the very top of the form and again with its full adress in Chicago in heavy type. The name is not strikingly similar to either of the names of the other companies with which defendant contracted.

It is manifest, and apparently plaintiff attempted to stress the fact, that it knew that the defendant was carrying his ad in a competing publication but it can not be said, and there is no proof, that it knew that at the time he received the solicitation for the contract he was then expecting a proof of the ad from one of the firms with which he had contracted. This is the situation which caused the mistake concerning which defendant complains. It is non sequitur to contend that for anything that appears in this record the plaintiff could reasonably have anticipated that the situation which defendant says caused him to sign the contract would have occurred.

What was the obligation enjoined upon the defendant before he may say that he has a good defense to the action

upon the executed contract which he signed? It is somewhat unusual that a court at this late day should have to repeat, that one who signs a contract without first making a reasonable effort to learn what is in it may not in the absence of fraud, or mutual mistake, avoid the effect of such contract. **B. & O. Ry. Co. v. Bing, et al., 89 Oh St 92.**

A succinct statement of the law is taken from Judge Davis' opinion in **McAdams v. McAdams, 80 Oh St 241,** quoting from the language of Mr. Justice Hunt in Upton, Assignee v. Tribilcock, 91 U. S. 50:

"It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission ˟ * *."

Business men, of all persons, should be the last to urge that this rule of law be relaxed for in it is embodied a principle which protects them in their contractual relations with their customers.

Upon a minute and searching examination we find nothing whatever about the composition, appearance or subject matter of the form upon which is found the contract signed by the defendant which would have a tendency to mislead any person of average intelligence, if he would read it.

Upon the test to be applied to determine when mistaken identity may be asserted to reform a written contract, 3 Pomeroy Equity Jurisprudence, 5th Ed., page 388, par. 870, has this to say:

"It is a rule that a contract will not be reformed for a unilateral mistake, nor does such mistake, of itself, render the transaction voidable. However, equitable relief by rescission may be given if the mistake relates to a material feature of the contract, if it is of such grave consequence that enforcement of the contract as made will be unconscionable, if it **occurred notwithstanding the exercise of ordinary diligence by the party making the mistake and if the other party can be put in statu quo.**"

The emphasized parts of the rule preclude the defense of mistaken identity here. The trial judge found no fraud

proven. Neither can we. These two defenses failing, there is nothing left to support the judgment and as the plaintiff made full proof of its case, the finding and judgment should have been for the plaintiff as prayed.

We briefly consider some of the authorities cited by appellee and commented upon by the trial judge.

Toledo v. Schulters, 11 O. C. C. 528 (536) is cited for the proposition that the facts and inferences to be drawn from the testimony support a finding either of fraud or mistaken identity. The case presents neither element. It treats of a situation of mutual mistake in the description in a deed. The court found that both parties acted upon a plain misunderstanding. It does not touch the principle that negligence on the part of the mistaken party will prevent rescission for a unilateral mistake.

Ashland Towson Corp. v. Kaunic, 110 Pa. Sup. Ct. 496, 501, and Surochi v. Ball, 160 Pa. Sup. Ct. 349, 352, consider contracts, one of which was found to have been fraudulently prepared and the other described as "machinations of the designedly wicked."

9 O. Jur. 275 is a general statement that "If by reason of mistake a party contracts with another person in the belief that he is contracting with another the contract may be avoided." Patently, this is a statement that is too broad. Supporting the text is cited School Sisters v. Kusnitt, L. R. A. 1916D, 801, and annotation. This authority has been questioned but there the defendant in placing the contract under consideration believed, and had good reason to believe, that it was dealing with another than the plaintiff "and that this belief was induced by the conduct of Dietrick, the agent of the appellant." The inducement to the contract involved many oral misrepresentations by the agent of the plaintiff company. The facts are extended but the conclusion of the court is well supported.

In The Arthur Coal and Coke Company v. Pittsburg Coal Company, 17 O. C. C. N. S. 491, it was held that the contract did not come into existence for want of assent of the vendee by reason of mistake as to the identify of the vendor. The charge of the court states the facts upon which the judgment must have been predicated. The court charged, page 492 of the opinion:

"that notwithstanding the selling agent, * * *, may have been in fact acting for plaintiff's assignor in making the contract, yet, **if he did not so inform the defendant, and if the defendant in good faith supposed and believed it was**

contracting with a company with which it had previously dealt, and, which was indebted to it, the situation would be that the minds of the parties never met in respect to a material part of the contract."

The emphasized parts of the charge mark some of the differences in the cited and instant case. Here, the plaintiff clearly in its proposal informed the defendant as to its identity and as to the subject matter of the contract. The court in the cited case stressed the fact that the vendee's right of set-off was involved as a material part of the contract. This case in no sense relieves a person who is claiming the benefit of a mistake from exercising ordinary diligence to avoid the mistake which caused him to act to his disadvantage.

The trial judge was also of opinion that plaintiff may have misconceived its cause of action because in April, 1945, the contract having been signed in September, 1944, the 40,000 copies of the publication had not been placed in the mail. This development alone is insufficient to show that at the time the defendant undertook to rescind the contract the plaintiff had it in its power to reduce the cost of the publication to the defendant.

Judgment of the trial court reversed and cause remanded with instructions to enter judgment for the plaintiff on its petition, as prayed, with costs.

MILLER, PJ, and WISEMAN, J, concur.

## ON APPLICATION FOR REHEARING

No. 2049. Decided January 27, 1950.

By THE COURT:

We have an application for rehearing, together with a letter from Mr. Vandenbrock presenting argument why we should reverse the conclusion reached in our opinion.

Our rules now make no provision for applications for rehearing and there is nothing in the application or the letter which presents any question, of substance, which we did not fully consider in our former opinion.

The defense of the appellee was most capably presented both in the trial court and in this Court. Counsel urged and briefed every defense that could possibly have been interposed upon the facts adduced at the trial.

It is urged on the application that the trial court erred in not admitting testimony from other advertisers who had con-

tracted with the plaintiff to the effect that they, too, had been misled by the form of the contract presented to and signed by them. We directed attention in our former opinion to the fact that the trial judge did not, as appeared by his written opinion, find any fraud of the plaintiff established. However, we discussed and analyzed the defense of fraud. Other similar acts are admissible in fraud cases if they have the effect of showing the intent with which the fraudulent act was committed. However, such similar acts are only admissible when and if there is basic proof of conduct or representation, which in itself may be found to be fraudulent. **U. S. Life Insurance Co. v. Wright, 33 Oh St 533.** The first element of fraud is that there be a representation made as a statement of fact and that it was untrue. Until this is established another element, namely that the mis-statement was made with intent to deceive, is of no concern.

The trial judge was logical in refusing to admit the testimony proffered by other advertisers.

Although this question is not properly presented we have considered it. **Sec. 12223-1 GC, Rule 7, Rules of Practice; 81 Oh Ap xliii.**

In the letter, it is argued that there was collusion between one of the companies with which defendant had placed his ad and the plaintiff, in that the copy of the ad was a proof from one of the companies with which defendant had contracted. That there was collusion is purely conjectural, but that the copy was taken from another directory is testified by the secretary of plaintiff and by the defendant. The contract which defendant signed will bear no interpretation that any part of it was tendered to the defendant as a proof. On the contrary, it was stated that it was a copy which "appears in another publication and this form is not a renewal or proof but, if signed and returned, is an authorization to publish an advertisement in our directory."

We have never doubted the claim of the defendant that he was misled by the form of the contract which he signed, but that fact is insufficient as a legal defense because he failed to exercise that degree of care and attention which was enjoined upon him before placing his name on the contract.

The application will be denied.

MILLER, PJ, HORNBECK and WISEMAN, JJ, concur.