GARTRELL, Appellee and Cross–Appellant,

v.

GARTRELL, Appellant and Cross–Appellee.

[Cite as *Gartrell v. Gartrell*, 181 Ohio App.3d 311, 2009-Ohio-1042.]

Court of Appeals of Ohio,
Fifth District, Tuscarawas County.

No. 2007–AP–0071.

Decided March 3, 2009.

</div>

Thomas W. Fox, for appellee and cross-appellant.

Lorrie E. Fuchs, for appellant and cross-appellee.

HOFFMAN, Presiding Judge.

{¶ 1} Defendant-appellant and cross-appellee, Gloria Gartrell, appeals various decisions of the Tuscarawas County Court of Common Pleas in favor of plaintiff-appellee and cross-appellant, John M. Gartrell.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} The parties were married on September 18, 2005, after a 15-year on-again, off-again dating relationship. Mr. Gartrell is 56 years of age and a licensed attorney who has practiced law in Ohio since November 1988. Ms. Gartrell is 57 years old and works as a waitress.

{¶ 3} Prior to the marriage, on July 18, 2005, Mr. Gartrell contacted attorney Hank Meyer to discuss the drafting of an antenuptial agreement. On July 19, 2005, at approximately 4:00 p.m., Meyer's office faxed Mr. Gartrell a 17-page rough draft of the agreement for his review. At approximately 4:15 p.m., Mr. Gartrell called Meyer to discuss changes to the document. He then took the document home with him. The next morning, he visited Meyer's office to discuss additional changes to be made to the draft of the prenuptial agreement. On July 20, 2005, Meyer faxed Mr. Gartrell a revised draft of the agreement. Mr. Gartrell then brought a number of changes to Meyer's attention, including the names on the acknowledgment pages of the agreement and an error in the spelling of his name within the body of the agreement.

{¶ 4} On July 20, 2005, Mr. Gartrell arranged a meeting at Meyer's office for the parties to execute the agreement. The parties dispute whether Ms. Gartrell had prior knowledge of the antenuptial agreement's being prepared. Ms. Gartrell was very upset upon learning of the agreement and refused to go into Meyer's office to sign it. Mr. Gartrell provided Ms. Gartrell with a copy of the faxed, revised copy of the prenuptial agreement. Mr. Gartrell later called off the marriage, but the parties continued to date.

{¶ 5} Mr. Gartrell claims to have never had a copy of the antenuptial agreement after giving Ms. Gartrell his draft copy and asserts that he did not read the document prior to signing it. Ms. Gartrell claims that the parties repeatedly discussed her receiving one-half of the home and waiving all rights to Mr. Gartrell's other property and pension and all rights to spousal support in the event of divorce.

{¶ 6} Meyer testified that he had never read the agreement either, because he had had his secretary prepare the antenuptial agreement. His secretary acted independently, without substantial direction or input, in preparing the document.

Meyer had never read the document, because the parties never came in for their appointment.

{¶ 7} The parties executed the prenuptial agreement on the same day they were married, just prior to the marriage ceremony.

{¶ 8} Section 2b of the antenuptial agreement reads:

{¶ 9} "Notwithstanding the foregoing, the parties hereto, hereby recite that they are residing in residence property located at post office address of 215 East 12th Street, Dover, Tuscarawas County, Ohio 44662 and being Tuscarawas County Tax parcel No. 1500037001 which property is in the name of John, but for all purposes herein, the same shall be considered joint/or marital property shared equally between them."

{¶ 10} Section 4A reads:

{¶ 11} "RIGHTS UPON DIVORCE, DISSOLUTION, OR SEPARATION:

{¶ 12} "4.* * *

{¶ 13} "A. Separate Property. All separate property, real and personal, tangible and intangible, shall remain free and clear of any claim by the other party including all claims arising by reason of the marriage or relationship. Each party shall keep this separate property. Separate property shall include all property, real and personal, tangible or intangible which is:

{¶ 14} "(1) Owned or acquired by each party prior to the date of marriage (including but not limited to the assets listed on Exhibit A and B attached hereto) and any appreciation thereof: EXCEPTING, the Residence real property as referred to in Paragraph 2.b. above."

{¶ 15} Exhibit A to the agreement reads:

{¶ 16} "PROPERTY OF JOHN M. GARTRELL

{¶ 17} "The following shall be designated separate property unless otherwise subsequently changed by the owner:

{¶ 18} "1.   Home located at 215 E. 12th Street, Dover, Ohio 44622."

{¶ 19} The agreement also provided that Ms. Gartrell would waive all future rights to any other property of Mr. Gartrell and would waive all rights to present or future spousal support and to Mr. Gartrell's pension, present and future.

{¶ 20} On December 20, 2006, the trial court magistrate determined that the terms of the agreement were clear and unambiguous. The magistrate also ruled that Mr. Gartrell was prohibited from introducing testimony relative to the intent of the parties and the circumstances surrounding the drafting and execution of the agreement. Mr. Gartrell filed a motion to set aside the order of the

magistrate, and Ms. Gartrell filed a motion in opposition to the motion to set aside the order.

{¶ 21} On February 12, 2007, the trial court vacated the magistrate's decision to prohibit Mr. Gartrell from presenting evidence on the issue of intent in regarding to his defense of reformation and rescission.

{¶ 22} The matter proceeded to trial. By judgment entry dated September 26, 2007, the trial court determined that the defense of reformation was not applicable, because the record did not support a finding of mutual mistake. The trial court instead rescinded the agreement based upon Mr. Gartrell's unilateral mistake, as Mr. Gartrell's lawyer negligently prepared the agreement and then neither Mr. Gartrell nor his lawyer read it before it was executed. The trial court granted the divorce to both parties on the grounds of incompatibility and ordered each party to retain their separate property free and clear of any claims by the other.

{¶ 23} Ms. Gartrell now appeals, assigning as error:

{¶ 24} "I. The trial court committed an error of law when it allowed the plaintiff/attorney to avoid liability under a prenuptial agreement that the plaintiff/attorney had prepared because the plaintiff/attorney claimed that he did not read the agreement before he signed the same and the plaintiff/attorney's lawyer claims he did not read the agreement either."

{¶ 25} "II. The trial court committed reversible error when he determined that the *Gross vs. Gross* (1984) 11 Ohio St.3d 99, 11 OBR 400, 464 N.E.2d 500 case controlled to preclude the enforcement of the antenuptial agreement because the terms promoted or encouraged divorce."

{¶ 26} "III. The trial committed reversible error when he determined that [Ms. Gartrell] had the burden of proving that [Mr. Gartrell] committed a mistake when he signed the antenuptial agreement."

{¶ 27} On cross-appeal, Mr. Gartrell assigns as error:

{¶ 28} "I. If he determined it at all any finding by the trial judge that the antenuptial agreement was 'clear and unambiguous' was error as a matter of law."

{¶ 29} All three of Ms. Gartrell's assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

{¶ 30} Ms. Gartrell asserts that the trial court should not rescind a contract in favor of Mr. Gartrell when he was negligent in failing to discover his unilateral mistake. *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507. A party will not be granted relief from a unilateral mistake when the mistake is the result of the negligence of the party seeking relief. *Aviation*

*Sales, Inc. v. Select Mobile Homes* (1988), 48 Ohio App.3d 90, 548 N.E.2d 307. The burden of proving unilateral mistake is on the party seeking rescission and must be met by clear and convincing evidence. *Gen. Tire, Inc. v. Mehlfeldt* (June 23, 1999), Summit App. No. 19269, 1999 WL 420346; *Frate v. Rimenik* (1926), 115 Ohio St. 11, 152 N.E. 14.

{¶ 31} Ms. Gartrell cites the Second District Court of Appeals' decision in *Indep. Directory Corp. v. Vandenbrock:*

{¶ 32} "It is somewhat unusual that a court at this late day should have to repeat, that one who signs a contract without first making a reasonable effort to learn what is in it may not in the absence of fraud, or mutual mistake, avoid the effect of such contract. *Baltimore & O.R. Co. v. Bing, et al.,* 89 Ohio St. 92, 105 N.E. 142.

{¶ 33} "A succinct statement of the law is taken from Judge Davis' opinion in *McAdams v. McAdams* [1909], 80 Ohio St. 232, 88 N.E. 542, quoting from the language of Mr. Justice Hunt in *Upton v. Tribilcock* [1875], 91 U.S. [45], 50, 23 L.Ed. 203: 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written; but such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission * * *.' [80 Ohio St. at 241, 88 N.E. 542.]

{¶ 34} "Business men, of all persons, should be the last to urge that this rule of law be relaxed for in it is embodied a principle which protects them in their contractual relations with their customers.

{¶ 35} "Upon a minute and searching examination we find nothing whatever about the composition, appearance or subject matter of the form upon which is found the contract signed by the defendant which would have a tendency to mislead any person of average intelligence, if he would read it.

{¶ 36} "Upon the test to be applied to determine when mistaken identity may be asserted to reform a written contract, 3 Pomeroy Equity Jurisprudence, 5th Ed., page 388, par. 870, has this to say: 'It is a rule that a contract will not be reformed for a unilateral mistake, nor does such mistake, of itself, render the transaction voidable. However, equitable relief by rescission may be given if the mistake relates to a material feature of the contract, if it is of such grave consequence that enforcement of the contract as made will be unconscionable, if it occurred notwithstanding the exercise of ordinary diligence by the party making the mistake and if the other party can be put in status quo.' " *Indep. Directory Corp. v. Vandenbrock* (App.1950), 57 Ohio Law Abs. 313, 43 O.O. 229, 94 N.E.2d 228, 230.

{¶ 37} We agree that failure to read the terms of a contract is not a defense to the enforcement of the contract. *Haller v. Borror* (1990), 50 Ohio St.3d 10, 552 N.E.2d 207. The Tenth District Court of Appeals addressed this issue in the similar case of *Hadden Co., L.P.A. v. Del Spina* (Aug. 26, 2003), Franklin App. No. 03AP–37, 2003-Ohio-4507, 2003 WL 22006842, holding:

{¶ 38} "One of the most celebrated tenets of the law of contracts is that a document should be read before being signed, and the corollary to this rule is that a party to the contract is presumed to have read what he signed and cannot defeat the contract by claiming he did not read it. See, e.g., *McAdams v. McAdams* (1909), 80 Ohio St. 232, 241, 88 N.E. 542. Mr. and Mrs. Hadden are an attorney and a treasurer to a law office. Nothing excuses their failure to read the purchase contract prior to signing."

{¶ 39} Mr. Gartrell cites the Ninth District Court of Appeals' decision in *Gen. Tire, Inc. v. Mehlfeldt* (June 23, 1999), Summit App. No. 19269, 1999 WL 420346, in arguing that his negligence does not bar rescission of the agreement:

{¶ 40} "In light of the above discussion, this Court holds that a mistaken party's ordinary negligence in either causing the mistake or failing to discover that mistake will not bar him or her from obtaining rescission of a contract. Rather, some greater degree of negligence * * * exists in nearly all mistake situations. To preclude a mistaken party from rescinding a contract based on his ordinary negligence would essentially eviscerate the rule."

{¶ 41} The trial court found that Mr. Gartrell's conduct did not rise above ordinary negligence so as to bar rescission for his unilateral mistake of fact. Rather, some degree of negligence greater than ordinary negligence is required before a party will be barred from rescission of a contract citing *Gen. Tire.* The trial court found that Mr. Gartrell's mistake was the result of ordinary negligence, and therefore it did not bar rescission of the agreement. We disagree.

{¶ 42} Mr. Gartrell's negligence in this matter rose above ordinary negligence. Mr. Gartrell has practiced law in Ohio for approximately 20 years. Testimony offered before the trial court indicates that his lawyer faxed him a rough draft of the antenuptial agreement, which he reviewed and faxed back to his attorney with changes. The testimony indicates that the changes were not merely to the exhibits, but were in the body of the agreement itself. Mr. Gartrell then signed the agreement without further review. Accordingly, we find that he is barred from rescission of the contract due to his gross negligence.

{¶ 43} The trial court's decision was based on an alternative finding that the antenuptial agreement was void as against public policy. The trial court concluded:

{¶ 44} "The Court finds that the Antenuptial Agreement is not valid and enforceable because the terms of the Agreement encourage divorce or profiteering by divorce. The Court finds that the situation in this case is very similar to the hypothetical example in that Defendant would be receiving a very significant monetary sum for a marriage of very short duration. The Court finds that the agreement, as drafted, promoted divorce based upon the windfall to Defendant provided in the Agreement without regard to how long the parties remained married."

{¶ 45} The trial court determined that enforcement of the agreement at issue would be unconscionable as the terms of the agreement encourage divorce or profiteering by divorce. The court relied upon the Ohio Supreme Court decision in *Gross v. Gross* (1984), 11 Ohio St.3d 99, 11 OBR 400, 464 N.E.2d 500, in finding rescission of the agreement appropriate:

{¶ 46} "An antenuptial agreement is a contract entered into between a man and a woman in contemplation, and in consideration, of their future marriage whereby the property rights and economic interests of either the prospective wife or husband, or both, are determined and set forth in such instrument. These agreements may include: provisions concerning the disposition or devolution of property and payments for sustenance upon the death of one of the spouses; provisions for the distribution of property and the sustenance or maintenance of one or other of the spouses, most usually the wife, upon a separation or divorce; or a combination of all of these concerns between the parties.

{¶ 47} " * * *

{¶ 48} "We, therefore, join those other jurisdictions that have expressed the growing trend of legal thought in this country that provisions contained within antenuptial agreements providing for the disposition of property and awarding sustenance alimony upon a subsequent divorce of the parties are not void per se as being against public policy. We hold that such agreements are valid and enforceable if three basic conditions are met: one, if they have been entered into freely without fraud, duress, coercion or overreaching; two, if there was a full disclosure, or full knowledge, and understanding, of the nature, value and extent of the prospective spouse's property; and, *three, if the terms do not promote or encourage divorce or profiteering by divorce.*

{¶ 49} "The elements of the first condition may be read with their generally accepted meaning being applicable. Accordingly, the term 'overreaching' is used in the sense of one party by artifice or cunning, or by significant disparity to understand the nature of the transaction, to outwit or cheat the other.

{¶ 50} "The elements of the second condition would be satisfied either by the exhibiting of the attachment to the antenuptial agreement of a listing of the

assets of the parties to the agreement, or alternatively a showing that there had been a full disclosure by other means.

{¶ 51} *"A hypothetical example of the type of situation which condition three seeks to avoid is where the parties enter into an antenuptial agreement which provides a significant sum either by way of property settlement or alimony at the time of a divorce, and after the lapse of an undue short period of time one of the parties abandons the marriage or otherwise disregards the marriage vows."* (Emphasis added.) 11 Ohio St.3d at 105, 11 OBR 400, 464 N.E.2d 500.

{¶ 52} We find it noteworthy that the Supreme Court did not distinguish within its hypothetical which party leaves the marriage or who benefits under the terms of the agreement. The court's hypothetical in *Gross* leads us to conclude that the validity of the agreement does not depend upon which party benefits under the terms of the agreement, or upon which party abandons the marriage or disregards the marriage vows.[1] As a result, the facts of this case mirror the hypothetical situation the third condition in *Gross* seeks to avoid. Thus, we find that the antenuptial agreement at issue is void as against public policy pursuant to the Supreme Court's decision in *Gross*.

{¶ 53} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

<div align="center">Cross-appeal</div>

{¶ 54} On cross-appeal, Mr. Gartrell asserts that any finding by the trial court that the agreement at issue was clear and unambiguous is an error as a matter of law.

{¶ 55} Based upon our analysis and disposition of Ms. Gartrell's assigned errors, we find the error raised on cross-appeal to be moot.

<div align="right">Judgment affirmed.</div>

EDWARDS, J., concurs.

WISE, J., dissents.

WISE, Judge, dissenting.

{¶ 56} I respectfully dissent from the majority decision regarding the second assigned error.

{¶ 57} The majority correctly sets forth that a prenuptial agreement providing for the disposition of marital property is valid and not void per se as being against public policy, where the three conditions of *Gross v. Gross* (1984), 11 Ohio

---

1. The circumstances presented in the case sub judice invite the Supreme Court's revisiting this issue to consider whether the third condition can be applied defensively by the party who abandons the marriage after a short time.

St.3d 99, 11 OBR 400, 464 N.E.2d 500, are met. I do not concur, however, in the majority's determination that the present prenuptial agreement must be disregarded because of the "encourag[ing] divorce or profiteering by divorce" prong of *Gross*. In the case sub judice, Ms. Gartrell did not pursue a divorce and should not be imputed with seeking to "profit" under the parties' agreement.

{¶ 58} I recognize that the Ohio Supreme Court did not, within the aforementioned prong three of *Gross* and its corresponding hypothetical, technically distinguish between potential profiteering by the party seeking divorce and potential profiteering by the nonmoving party. However, the court stated the following after reviewing the development of case law in various states on the subject of prenuptial agreements: "Upon a review of all of the public policy factors presented, we conclude that the modern trends of marriage and divorce across the country dictate that reasonable laws must be forthcoming to accommodate these changing social attitudes. It may be reasonably concluded that these types of agreements tend to promote or facilitate marriage, rather than encourage divorce." *Gross* at 105, 11 OBR 400, 464 N.E.2d 500. I am thus not inclined to interpret the third prong of *Gross* in a manner that automatically nullifies the prenuptial agreement in this case, as such contracts are favored in the law in Ohio. See *Solomon v. Main* (Feb. 19, 1985), Knox App. No. 84–CA–12, 1985 WL 7191, citing *Rocker v. Rocker* (1967), 13 Ohio Misc. 199, 208, 42 O.O.2d 184, 232 N.E.2d 445.

{¶ 59} I would therefore reverse and order a new divorce trial, and direct the adoption of the magistrate's decision that had prohibited testimony relative to the intent of the parties and the circumstances surrounding the execution of the prenuptial agreement.