[Cite as *In re J.W.*, 2017-Ohio-8486.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105337**

---

# IN RE: J.W.
# A Minor Child

[Appeal By Father]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. CU-16106847 and CU-16106848

**BEFORE:** Keough, A.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** November 9, 2017

**ATTORNEY FOR APPELLANT**

Carol Dillon Horvath
P.O. Box 42044
Brookpark, Ohio 44142


**ATTORNEYS FOR APPELLEE
CJFS-OCSS**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Timothy W. Clary
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

**Mother**

S.D.
1970 East 71st Street, Apartment 3
Cleveland, Ohio 44103

**GUARDIAN AD LITEM**

Amy L. Nash
1180 Winston Road
Cleveland, Ohio 44121

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** This appeal is before the court on the accelerated docket pursuant to App.R. 11.1 and Loc. App.R. 11.1. The purpose of an accelerated appeal is to allow this court to render a brief and conclusory opinion. *State v. Priest*, 8th Dist. Cuyahoga No. 100614, 2014-Ohio-1735, ¶ 1.

**{¶2}** In April 2016, Father filed an application to determine custody of his and Mother's two minor biological children. At a subsequent pretrial, Father advised the magistrate that he wished to be named legal custodian because he paid child support (as ordered in an earlier case) and all other expenses for the children, but was concerned about the level of care the children received while they were with Mother. The court appointed a guardian ad litem for the children, and advised the parties to cooperate with the guardian ad litem's investigation and work toward a resolution of the matter.

**{¶3}** On December 13, 2016, the day of trial, the parties advised the court that they had settled the matter. Father, Mother, and the guardian ad litem appeared before the magistrate; neither Father nor Mother had counsel. During the hearing, the magistrate reviewed the parenting time agreement signed by Father and Mother on December 12, 2016. Upon questioning, Father and Mother each advised the court that they had signed the agreement, believed it to be in the best interest of their children, and

wanted the court to adopt the agreement as its order. The guardian ad litem recommended approval of the agreement as in the best interest of the children.

{¶4} Thereafter, the magistrate entered a decision designating Mother as the residential parent and legal custodian, ordering that the children would live with Mother, subject to Father's right to parenting time as set forth in the parenting time schedule agreed to by the parties, and approving and adopting the terms of the parenting time agreement. The agreement signed by the parties was incorporated into the magistrate's decision. Father did not file any objections to the magistrate's decision, and the trial court subsequently approved and adopted the decision, incorporating the agreement as an exhibit to the journal entry. This appeal followed.

{¶5} In his single assignment of error, Father asserts that the trial court's judgment should be reversed because he thought he was agreeing to a shared parenting agreement. He contends that his unilateral mistake of fact, coupled with the trial court's alleged failure to determine with certainty that he understood the agreement, requires reversal. We overrule Father's assignment of error and affirm the trial court.

{¶6} Settlement agreements are generally favored in the law. *Szmania v. Szmania*, 8th Dist. Cuyahoga No. 90346, 2008-Ohio-4091, ¶ 8. As with usual contract interpretation, the court's role is to give effect to the intent of the parties as reflected in the agreement. *Jackson v. Jackson*, 5th Dist. Richland No. 12CA28, 2013-Ohio-3521, ¶ 22. The enforceability of a settlement agreement "'depends upon whether the parties

have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced.'" *In re J.S.C.*, 8th Dist. Cuyahoga No. 104548, 2017-Ohio-968, ¶ 18, quoting *Tryon v. Tryon,* 11th Dist. Trumbull No. 2007-T-0030, 2007-Ohio-6928, ¶ 23. A settlement agreement does not have to be fair and equitable to be binding and enforceable, so long as it is not procured by fraud, duress, overreaching, or undue influence. *J.S.C.* at ¶ 19, citing *Vasilakis v. Vasilakis*, 8th Dist. Cuyahoga No. 68763, 1996 Ohio App. LEXIS 2569 (June 20, 1996).

{¶7} In some circumstances, a party to an agreement who makes a unilateral mistake in entering into the agreement is permitted to avoid the mistake by rescinding the agreement, which is what Father seeks in this case. Under Ohio law, a unilateral mistake occurs when one party recognizes the true effect of an agreement while the other does not. *Gen. Tire, Inc. v. Mehlfeldt*, 118 Ohio App.3d 109, 115, 691 N.E.2d 1132 (9th Dist.1997). A unilateral mistake can be grounds for rescission of a contract if the other party had reason to know of the mistake or was at fault in causing the mistake such that enforcing the contract would be unconscionable. *Richmond v. Evans*, 8th Dist. Cuyahoga No. 101269, 2015-Ohio-870, ¶ 31. Relief for a unilateral mistake will not be granted where the party seeking relief bore the risk of the mistake or where the mistake was the result of that party's own negligence. *Id.*, citing *Jackson v. Jackson*, 5th Dist. Richland No. 12 CA28, 2013-Ohio-3521, ¶ 23-26.

**{¶8}** The party asserting unilateral mistake must prove it by clear and convincing evidence. *Gartrell v. Gartrell*, 181 Ohio App.3d 311, 908 N.E.2d 1019 (5th Dist.2009). Clear and convincing evidence is evidence that produces in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." *In re T.P.*, 8th Dist. Cuyahoga No. 102705, 2015-Ohio-3679, ¶ 34.

**{¶9}** Here, the record reflects that Father and Mother made a binding and enforceable settlement agreement. Father has failed to establish by clear and convincing evidence any unilateral mistake; in fact, the record reflects that Father fully understood the agreement and agreed to be bound by its terms.

**{¶10}** At the hearing, the magistrate reviewed the terms of the agreement with the parties. She explained that the agreement provided that Mother would be "the residential parent for school purposes," and that the children would go to school in the school district of the city where Mother was living and "primarily stay at mom's residence." Father stated, "I understand that."

**{¶11}** The magistrate further explained that the agreement provided that the children would stay with Father from Thursday at 3:30 p.m. until Sunday at 5:30 p.m. three weekends per month, and that during those visits, Father would be required to bring the children to school on Friday. Father responded affirmatively when the magistrate asked him if he understood that arrangement.

**{¶12}** The magistrate further explained that the agreement provided that on one weekend per month, the children would stay with Father from Thursday after school until Friday morning, and Mother would have the children from Friday after school to Sunday evening. The magistrate further explained that Mother would have the children Sunday to Thursday every week. When the magistrate asked Father if he understood, he replied, "Sunday through Thursday every week, right."

**{¶13}** The magistrate then explained that the agreement provided that Mother and Father would alternate holidays each year, Father would receive two weeks vacation time with the children during the summer, and how the parties were to schedule that time. Father responded affirmatively when the magistrate asked him if he understood those terms.

**{¶14}** The magistrate further explained that the agreement provided that Father would have the children for the first six weeks of the summer, during which time Mother would have the children every other weekend from Friday after work until Sunday evening. When Father asked why the children could not stay with him the entire summer, the magistrate explained that under the agreement, the children would be with him for six weeks during the summer, plus an additional two weeks for vacation, and Mother would have them for two weeks of vacation for a total of ten weeks, which the magistrate explained essentially comprised the whole summer. Father responded, "All right. Okay."

**{¶15}** The magistrate then explained that if the children's extracurricular activities took place when the children were with Father, he was to take them to the activity, and if they occurred while the children were with Mother, she was to take them. She further explained that if the children did not want to participate in a particular activity, "their choice rules." Father agreed, stating, "Right. You don't force them."

**{¶16}** The magistrate then explained that under the agreement, the parties were to inform each other if the children were sick while in their care, or if the children needed medication or to go to the hospital. She further told the parties that they should talk to each other about any concerns they had about the children so they could both be involved in making decisions and discipline would be consistent in each household. Both Mother and Father stated that they agreed to do so.

**{¶17}** The magistrate asked Father if he had signed the agreement, and he responded affirmatively. She then asked him if he believed the agreement was in the best interests of his children, and he again responded affirmatively. She then asked Father if he was asking the court to adopt the agreement, and he again responded affirmatively. When Mother also responded affirmatively to these questions, the magistrate stated that she would make the agreed parenting schedule the final order of the court.

**{¶18}** On this record, there is no evidence, and certainly not clear and convincing evidence, that Father did not understand the terms of the agreement. Despite Father's

argument otherwise, the record reflects that the magistrate carefully reviewed the agreement with him and determined that he understood exactly what he had agreed to. Furthermore, the record reflects that the magistrate specifically told the parties that Mother would be the "residential parent," subject to Father's parenting time as set forth in the agreement. Moreover, although Father seems to argue that the agreement should be rescinded because he did not have counsel, the record clearly indicates that even without counsel, Father understood the terms of the parenting agreement and intended to be bound by it. Finally, there is no evidence that Mother knew of Father's alleged mistake or caused it, such that enforcing the agreement would be unconscionable.

{¶19} It is well established that decisions of a trial court involving the care and custody of children are accorded great deference upon review. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). Thus, a trial court's judgment regarding the allocation of parental rights and responsibilities will not be disturbed absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). An abuse of discretion occurs when the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Because the record reflects that Father intended to be bound by the parenting agreement, the trial court did not abuse its discretion in adopting the magistrate's decision and incorporating the parenting agreement as part of its judgment. Accordingly, Father's assignment of error is overruled, and the trial court's judgment is affirmed.

**{¶20}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR