**GALEHOUSE CONSTRUCTION COMPANY, INC., Appellee,**

v.

**WINKLER et al., Appellants.**

[Cite as *Galehouse Constr. Co., Inc. v. Winkler* (1998), 128 Ohio App.3d 300.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

Nos. 97CA0052 and 97CA0057.

Decided June 10, 1998.

*Frank J. Witschey*, for appellee.

*David A. Looney*, for appellants.

REECE, Judge.

Appellants Richard L. and Connie Winkler ("the Winklers") appeal from the decision of the Wayne County Court of Common Pleas granting judgment in favor of appellee Galehouse Construction Company, Inc. ("Galehouse"). We affirm.

In late 1995, the Winklers became interested in purchasing a lot in the proposed Valleyview Farm housing development in Doylestown, Ohio. The Winklers contacted Galeheights Development, Inc., an entity related to appellee Galehouse and owner of the Valleyview Farm lots. After viewing several lots in the proposed development, the Winklers settled on a lot priced at $57,000. In December 1995, the Winklers asked the owner of Galehouse, John Stanley Galehouse, Jr. ("Stan"), to show them plans for various homes with construction costs in the $180,000 to $190,000 price range. The Winklers indicated that this price range was for construction of a house only, and did not include the price of the lot. Galehouse provided them with various books and plans, which the Winklers took home to peruse.

After looking over the plans, the Winklers returned to Galehouse and shared their ideas with Stan and his son, John Stanley Galehouse III ("John"), a manager at Galehouse. Galehouse drafted plans for a 2,661-square-foot house based upon the Winklers' ideas and gave the Winklers a quote of $198,000 for construction of the home. The quote did not include the price of the lot. Over the next several months, the Winklers added options and upgrades to the house plans. Most notably, they added over 500 square feet to the size of the home and substituted brick for the siding originally planned. After the options and increased size were calculated, the cost for construction of the home rose to $242,500, excluding the price of the lot. Galehouse and the Winklers then engaged in negotiations regarding the total purchase price for the lot and construction of the home. Galehouse made several concessions on both the construction and lot prices, and the parties eventually agreed upon a total purchase price of $291,000. The total price comprised $242,500 for construction and $48,500 for the lot.

Galehouse prepared a written contract to reflect the parties' agreement. In drafting the contract, John inadvertently failed to add the lot price, $48,500, into the total purchase price. Thus, the purchase price listed in the document included only the price of construction. The Winklers paid Galehouse $48,500, the price of the lot, as a deposit on the contract. Galehouse then paid Galeheights for the lot. Because of John's drafting mistake, the deposit was deducted from the construction amount, but not from the total purchase price. In September 1996, Galehouse faxed its final payoff figure of $252,795, representing the original construction costs plus $8,639 in change orders, to the Winklers' bank. The escrow company closed the transaction on September 29, 1996, according to the terms of the erroneously written contract. As a result, the final payoff to Galehouse was $48,500 short of the agreed purchase price.

Neither Stan nor John realized the drafting error until after the transaction closed. Upon discovering the mistake, Stan contacted the Winklers, informed

them of the mistake, and requested payment in full. The Winklers refused to pay and sought to enforce the erroneous contract. To secure payment of the remainder of the purchase price, Galehouse filed a mechanic's lien against the Winklers' house.

On November 8,1996, Galehouse filed suit against the Winklers in the Wayne County Court of Common Pleas, seeking reformation of the contract and payment of the agreed purchase price. The Winklers then counterclaimed for breach of contract and slander of title. The case was tried to the court on June 30, 1997. On July 9, 1997, the trial court entered judgment in favor of Galehouse in the amount of $48,500. The trial court also awarded the Winklers $1,750 on their claim for breach of contract. The Winklers timely appealed the trial court's decision.

The Winklers offer the following two assignments of error for our review:

"Where the evidence demonstrates that [Galehouse] had the opportunity to review the contract before it was signed, as a matter of law the trial court may not reform that contract based on mistake.

"Where the terms of a contract are consistent with [the Winklers'] expressed intentions and [the Winklers] are unaware of any mistakes in drafting of the contract, as a matter of law [Galehouse] is not entitled to reformation."

Because each assignment of error presents essentially the same argument, we address them together. The Winklers maintain that the trial court erred when it reformed the erroneous contract signed by the parties and awarded the balance of the agreed purchase price, $48,500, to Galehouse. We disagree.

▆▆▆▆ The Winklers claim that the trial court lacked the authority to reform the contract because the alleged error constituted a unilateral mistake on the part of Galehouse. Generally, a contract may not be reformed in the case of a unilateral mistake. *Gen. Tire, Inc. v. Mehlfeldt* (1997), 118 Ohio App.3d 109, 691 N.E.2d 1132. However, where the mistake occurred due to a drafting error by one party and the other party knew of the error and took advantage of it, the trial court may reform the contract. See *Liezert v. Liezert* (Oct. 2, 1991), Summit App. No. 15031, unreported, at 4, 1991 WL 199912. Reformation is appropriate if one party believes that a contract correctly integrates the agreement and the other party is aware that it does not, even though the mistake was not mutual. *Snedegar v. Midwestern Indemn. Co.* (1988), 44 Ohio App.3d 64, 70, 541 N.E.2d 90, 96–97.

▆▆▆▆ "Where, as here, reformation of a contract is sought on the basis of mistake, the party seeking such reformation must establish the existence of the mistake by clear and convincing evidence." *Justarr Corp. v. Buckeye Union Ins.*

*Co.* (1995), 102 Ohio App.3d 222, 225, 656 N.E.2d 1345, 1346. Clear and convincing evidence is the evidence necessary to elicit in the mind of the trier of fact a firm belief or conviction regarding the allegations sought to be established. *State v. Rexroad* (Apr. 1, 1998), Summit App. No. 18539, unreported, at 3, 1998 WL 150368. Upon the presentation of clear and convincing evidence, the trial court may properly reform a contract to reflect the intended agreement of the parties. *Justarr Corp., supra,* at 225, 656 N.E.2d at 1346–1347.

█ Review of the record in the case at bar indicates that Galehouse presented substantial evidence that the parties agreed to a purchase price of $48,500 for a lot plus $242,500 for construction of a home. Both Stan and John testified at trial as to this agreement. Each stated that the Winklers originally requested plans for a home in the $180,000 to $190,000 price range, but, after the Winklers increased the square footage of the home and requested costly options, the price for construction grew considerably. John and Stan also testified as to negotiations with the Winklers, and each maintained that the Winklers were well aware of the increased costs. John further testified that when he drafted the contract, he inadvertently failed to include the lot price in the total purchase price. Galehouse additionally offered the testimony of Gerald Swartzentruber, a contractor and competitor of Galehouse. Swartzentruber testified that $242,500 was not only reasonable for construction of a home the size and quality of the Winkler's home, but was in fact a shockingly low price.

The Winklers argue that the trial court should not have reformed the contract because they were not aware that the contract was erroneous and they understood $252,795 to be the total purchase price. They offer their own testimony in support of this contention. However, we note that issues of fact and credibility are matters for the finder of fact. *Aluminum Line Prod. Co. v. Rolls–Royce Motors, Inc.* (1994), 98 Ohio App.3d 759, 767, 649 N.E.2d 887, 892–893. The trial court found the testimony of the Galehouse witnesses to be more credible than the Winklers' testimony. The record supports the trial court's decision that clear and convincing evidence mandated reformation of the parties' contract.

In light of the foregoing, the Winklers' assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.