FAIVRE, Appellant,

v.

DEX CORPORATION NORTHEAST, Appellee.

[Cite as *Faivre v. DEX Corp. Northeast*, 182 Ohio App.3d 563, 2009-Ohio-2660.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–729.

Decided June 9, 2009.

564

Stebelton, Aranda & Snider and Daniel J. Fruth, for appellant.

Littler Mendelson, P.C., James M.L. Ferber, and Becky L. Ramseyer Melchiorre, for appellee.

KLATT, Judge.

{¶ 1} Plaintiff-appellant, Patrick J. Faivre, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, DEX Corporation Northeast ("DEX"). For the following reasons, we reverse and remand.

{¶ 2} Beginning April 11, 2005, DEX employed Faivre as Senior Vice President and General Manager. According to DEX, Faivre performed his job poorly. On

September 6, 2006, Faivre met with Sheldon Malchicoff, Chief Executive Officer of Data Exchange Corporation (the parent corporation of DEX), Alan Kheel, Senior Vice President and General Counsel of Data Exchange Corporation, and Kimberly Cuff, Senior Vice President—Human Resources of Data Exchange Corporation. At the start of the meeting, Malchicoff informed Faivre that DEX was terminating his employment. After Malchicoff left the room, Kheel presented Faivre with a severance agreement that Cuff had already signed on DEX's behalf. In the course of reviewing the severance agreement with Faivre, Kheel told Faivre that DEX was offering him three months of severance pay and benefit continuation. Faivre replied that he might need as much as a year to secure employment comparable to his position at DEX. Faivre, however, did not ask for additional severance and neither Kheel nor Cuff offered to extend the severance period beyond three months. Rather than immediately accepting or declining DEX's offer of three months' severance, Faivre took the severance agreement home to study it and review it with his attorney.

{¶ 3} In relevant part, the severance agreement stated:

In consideration of the general release contained in paragraph 2, below, and the provisions of paragraphs 3 through 11, below, DEX and you agree to the following:

1) a) Subject to subsections 1(b) and (c), below, DEX shall continue to employ you through November 30, 2007, (the "Termination Date"). It is understood that your employment with DEX from today through the Termination Date will be, for all purposes, a passive employment, and therefore you will not receive any promotions, salary increases, bonuses, profit shares or other employment related benefits, other than those enumerated below, and you will not be required to maintain an office or report to DEX or perform any work assignments, nor will you be entitled to reimbursement of any expenses normally afforded to other employees.

b) Your employment and the following salary and benefits (to the extent such benefits continue to be provided to other employees) will be continued until the Termination Date:

i) Salary of $150,000 per annum payable in bi-weekly amounts of $5,790.23 on DEX's regular paydays and monthly car allowance of $650.

{¶ 4} While reading over the severance agreement for a second time, Faivre realized that it stated that his employment would continue until November 30, *2007*, not November 30, *2006*. Thus, pursuant to the terms of the severance agreement, DEX would provide Faivre 15 months of salary and benefits, not three months. As he later testified in his deposition, Faivre understood that DEX had offered him only three months of severance during the September 6, 2006 meeting. However, Faivre did not contact Kheel (or any other DEX or

Data Exchange Corporation employee) to inquire about the discrepancy between the offer made during the meeting and the terms of the severance agreement. Instead, Faivre simply signed the agreement and returned it to Kheel via certified mail.

{¶ 5} Upon receiving the executed severance agreement, Kheel reviewed it and realized for the first time that it contained a typographical error that extended Faivre's severance to November 30, *2007*, instead of November 30, *2006*. Kheel immediately telephoned and e-mailed Faivre. When Kheel did not receive an answer, he sent Faivre a letter pointing out the error and enclosing a replacement page with the correct date. Kheel asked Faivre to initial the replacement page and return it. Kheel also advised Faivre that if he did not accept the corrected term, then DEX would consider the severance agreement rescinded due to mistake.

{¶ 6} Faivre received Kheel's letter, but he did not initial and return the replacement page. Rather, on January 2, 2007, Faivre filed suit against DEX asserting claims for breach of contract, promissory estoppel, and declaratory judgment. After completing discovery, both Faivre and DEX moved for summary judgment. Faivre argued that the severance agreement constituted a binding contract that DEX breached when it refused to provide him 15 months of severance. Faivre also argued that the severance agreement was an integrated contract and, thus, DEX could not introduce any parol evidence regarding the alleged typographical error. DEX, in its motion for summary judgment, contended that it committed a unilateral mistake in drafting the severance agreement. Asserting that the parol-evidence rule did not bar extrinsic evidence of mistake, DEX urged the trial court to consider Kheel's affidavit testimony that the severance agreement included a typographical error. Due to this unilateral mistake, DEX maintained that the trial court could rescind or reform the severance agreement, but it could not enforce it.

{¶ 7} In its March 20, 2008 decision and entry, the trial court concluded that the parol-evidence rule did not preclude it from considering extrinsic evidence of mistake. Reviewing the evidence submitted, the trial court found that DEX unknowingly presented Faivre with a severance agreement that contained a typographical error. Further, the trial court found that Faivre signed and submitted the severance agreement in an attempt to take advantage of DEX's error. Based upon these facts, the trial court held that a unilateral mistake existed and that reformation was the proper remedy for the mistake. The trial court then reformed the severance agreement to reflect November 30, 2006, as the "Termination Date" provided in subsection 1(a).

{¶ 8} Because the record did not indicate whether DEX had paid severance to Faivre from September 6 to November 30, 2006, the trial court could not

determine whether DEX had breached the reformed severance agreement. Thus, the trial court denied DEX summary judgment to the extent that a breach-of-contract claim remained for the recovery of severance for the period of September 6 through November 30, 2006. In all other respects, the trial court granted DEX summary judgment, and concomitantly, it denied Faivre summary judgment.

{¶ 9} On August 11, 2008, after consulting with the parties, the trial court issued a judgment entry ordering DEX to perform in accordance with the reformed severance agreement and pay Faivre three months' severance pay (i.e., $37,500) and car allowance (i.e., $1,950), plus postjudgment interest. Faivre now appeals from this judgment and assigns the following errors:

■ Whether the Trial Court erred to the prejudice of Appellant, Patrick Faivre, as a matter of law, in denying Plaintiff's Motion for Summary Judgment, via in [sic] its Entry of March 20, 2008 and in its Entry of August 11, 2008.

■ Whether the Trial Court erred to the prejudice of Appellant, Patrick Faivre, as a matter of law, in granting, in part, Defendant, DEX Corporation Northeast's Motion for Summary Judgment, via its Entry of March 20, 2008, and in its Entry of August 11, 2008.

{¶ 10} Appellate review of summary-judgment motions is de novo. *Andersen v. Highland House Co.* (2001), 93 Ohio St.3d 547, 548, 757 N.E.2d 329. " 'When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court.' " *Abrams v. Worthington,* 169 Ohio App.3d 94, 2006-Ohio-5516, 861 N.E.2d 920, ¶ 11, quoting *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that a trial court must grant summary judgment when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

■ {¶ 11} Because Faivre argues his two assignments of error together, we will address them together. By his assignments of error, Faivre first argues that the parol-evidence rule bars the consideration of any evidence extrinsic to the severance agreement. The trial court relied upon such extrinsic evidence to determine that a unilateral mistake occurred. Faivre contends that the trial court erred in doing so. We disagree.

{¶ 12} The parol-evidence rule is a substantive rule of law developed centuries ago to protect the integrity of written contracts. *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074; *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus. According to this rule, " 'a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing.' " *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 7, quoting Black's Law Dictionary (8th Ed.2004) 1149. By prohibiting the introduction of extrinsic evidence to alter or supplement the parties' final, complete expression of their agreement, the parol-evidence rule ensures the stability, predictability, and enforceability of written contracts and " 'effectuates a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements.' " *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts 541–548 (4th Ed.1999), Section 33:1.

{¶ 13} Ohio courts have recognized certain exceptions to the parol-evidence rule. Among these exceptions is the allowance of extrinsic evidence to prove mistake. *Galmish* at 27, 734 N.E.2d 782 (holding that the parol-evidence rule applies " 'absent fraud, *mistake* or other invalidating cause' " [emphasis added] ); *S. Ohio Med. Ctr. v. Trinidad*, 4th Dist. No. 03CA2870, 2003-Ohio-4416, 2003 WL 21991287, ¶ 18, 27–31 (recognizing the mistake exception to the parol-evidence rule and considering extrinsic evidence to determine whether a unilateral mistake occurred); *Gen. Tire, Inc. v. Mehlfeldt* (1997), 118 Ohio App.3d 109, 114, 691 N.E.2d 1132 (holding that parol evidence "may be used * * * to prove the existence of a mistake" and finding a unilateral mistake) (*"Mehlfeldt I"*). Because courts may consider parol evidence of a mistake, the trial court did not err in reviewing the extrinsic evidence that DEX offered to prove that it had made a unilateral mistake.

{¶ 14} Moreover, Faivre cannot rely upon the integration clause in the severance agreement to bar parol-evidence of a mistake. The rule of contract integration is a corollary principle to the parol-evidence rule, as the degree of integration determines whether the parol-evidence rule applies to a contract. *Galmish* at 28, 734 N.E.2d 782 ("The parol evidence rule applies, in the first instance, only to integrated writings * * * "); *Miller v. Lindsay–Green, Inc.*, 10th Dist. No. 04AP–848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 37 ("A corollary principal [sic] to the parol evidence rule is the rule of contract integration, whereby the degree of finality and completeness of a contract determines whether the parol evidence rule is applicable"). Logically, then, when the parol-evidence rule does not apply, neither does the rule of contract integration.

Therefore, the presence of an integration clause does not vitiate an established exception to the parol-evidence rule. *Galmish* at 28, 734 N.E.2d 782.

{¶ 15} Next, Faivre argues that the trial court erred in finding that DEX made a unilateral mistake. We disagree.

{¶ 16} " 'A unilateral mistake occurs when only one party has an erroneous belief as to the facts.' " *L.B. Trucking Co. v. C.J. Mahan Constr. Co.,* 10th Dist. No. 01AP–1240, 2002-Ohio-4394, 2002 WL 1969645, ¶ 46, quoting 2 Farnsworth on Contracts (2d Ed.1998) 585–586, Section 9.4. See also *Mehlfeldt I* at 115, 691 N.E.2d 1132 ("A unilateral mistake occurs when one party recognizes the true effect of an agreement while the other does not"); Restatement (Second) of Contracts (1981), Mistake Defined, Section 151 ("A mistake is a belief that is not in accord with the facts"). An erroneous belief as to the contents of a writing that expresses the parties' agreement is a mistake. Id. at Comment a. Here, DEX primarily relied upon Kheel's affidavit testimony to establish that it had made a unilateral mistake. Kheel testified that, on behalf of DEX, he had offered Faivre three months of severance and gave Faivre a written severance agreement that he believed was consistent with the verbal offer. When Kheel later reviewed the severance agreement, he found a typographical error that in effect provided Faivre with 15 months—not three months—of severance. Like the trial court, we find that this evidence establishes that DEX had an erroneous belief as to the contents of the severance agreement. Because DEX was the only party to hold this erroneous belief, it committed a unilateral mistake.

{¶ 17} Faivre, however, contends that Cuff, who he alleges drafted the severance agreement, meant to give him 15 months of severance. Based on this contention, Faivre argues that the severance agreement accurately reflects the terms that DEX wanted in the parties' contract. We find this argument unavailing. Nothing in the record reveals Cuff's true intent, much less establishes that she—as DEX's agent—purposefully offered Faivre 15 months of severance. Kheel, the only person to testify on DEX's behalf, unequivocally stated that the inclusion of "November 30, 2007" instead of "November 30, 2006" constituted a typographical error. Given Kheel's testimony, a trier of fact could only conclude that DEX mistakenly believed that the severance agreement actually stated "November 30, 2006." As it did not, DEX made a unilateral mistake.

{¶ 18} Finally, Faivre argues that the trial court erred in granting DEX relief for its unilateral mistake. Although we agree with Faivre that the trial court erred in reforming the severance agreement, we ultimately conclude that the trial court properly granted DEX summary judgment on the basis of unilateral mistake.

{¶ 19} Courts may use reformation to modify a written instrument so that the face of the writing reflects the actual intent of the parties. *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 286, 31 O.O.2d 557, 209 N.E.2d 194. Generally, courts do not reform contracts when a party makes a unilateral mistake. *L.B. Trucking*, 2002-Ohio-4394, 2002 WL 1969645, at ¶ 47; *Galehouse Constr. Co. v. Winkler* (1998), 128 Ohio App.3d 300, 303, 714 N.E.2d 954. However,

> "where the mistake occurred due to a drafting error by one party and the other party knew of the error and took advantage of it, the trial court may reform the contract. * * * Reformation is appropriate if one party believes that a contract correctly integrates the agreement and the other party is aware that it does not, even though the mistake was not mutual."

*L.B. Trucking* at ¶ 47, quoting *Winkler* at 303, 714 N.E.2d 954. See also *DeMuesy v. Haimbaugh* (Dec. 31, 1991), 10th Dist. No. 91AP–212, 1991 WL 281411 (holding that "the remedy of reformation can be applicable even when a mistake has been caused by a unilateral drafting error").

{¶ 20} In the case at bar, the trial court found that DEX made a unilateral drafting error that Faivre discovered and used to his advantage. Relying upon *L.B. Trucking*, the trial court invoked its equitable power of reformation to modify the "Termination Date" stated in the severance agreement to November 30, 2006. In doing so, the trial court improperly employed reformation to create a new contract that included a term to which Faivre never agreed.

{¶ 21} "An action for reformation is not to create an obligation but to establish the content of the instrument as intended by the parties." *Delfino* at 286, 31 O.O.2d 557, 209 N.E.2d 194. See also *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71, ¶ 13 (" 'The purpose of reformation is not to make a new agreement but to give effect to the one actually made by the parties, which is not accurately reflected in the written agreement' "); *Farmers Mkt. Drive–In Shopping Ctrs., Inc. v. Magana*, 10th Dist. No. 06AP–532, 2007-Ohio-2653, 2007 WL 1560276, ¶ 49 (holding that a court may reform an agreement " 'to make the writing conform to the real intention of the parties,' " but it cannot " 'make a new contract for those who executed the writing sought to be reformed' "). Thus, in order to reform a written contract, an underlying agreement between the parties must exist. The court then can reform the written contract so that it matches the terms of that underlying agreement. For example, in *L.B. Trucking,* an alleged oral agreement between the parties set the price of shot rock at $3.00 per ton, but the party that drafted the written contract mistakenly listed the price at $3.50 per ton. Id. at ¶ 41. In that case, the trial court could reform the contract because the parties had reached an agreement

(for $3.00 per ton) and reformation would allow the court to modify the written contract to mirror that underlying agreement.

{¶ 22} Here, Faivre never agreed to three months of severance. Although DEX orally offered Faivre three months of severance during the September 6, 2006 meeting, Faivre left the meeting without accepting or rejecting that offer. Thus, the trial court's reformation of the severance agreement bound Faivre to a contractual term that he never accepted. In essence, the trial court created a new contract that reflected only DEX's intent. Because a court cannot use reformation to create new contractual obligations, we conclude that the trial court erred in reforming the severance agreement.

{¶ 23} This conclusion, however, does not end our analysis. In its motion for summary judgment, DEX also argued that rescission was an appropriate remedy for its unilateral mistake. We agree.

{¶ 24} A court may grant a rescission of a contract on the basis of a unilateral mistake. *Gen. Tire, Inc. v. Mehlfeldt* (June 23, 1999), 9th Dist. No. 19269, 1999 WL 420346 (*"Mehlfeldt II"*). Ohio courts apply Section 153 of the Second Restatement of Contracts to determine whether to rescind a contract due to one party's mistake. See id.; *Selvage v. Emnett,* 181 Ohio App.3d 371, 2009-Ohio-940, 909 N.E.2d 143, ¶ 14; *Weber v. Budzar Industries, Inc.,* 11th Dist. No. 2004–L–098, 2005-Ohio-5278, 2005 WL 2416585, ¶ 37–40; *Trinidad,* 2003-Ohio-4416, at ¶ 26–31; *Aviation Sales, Inc. v. Select Mobile Homes* (1988), 48 Ohio App.3d 90, 93–94, 548 N.E.2d 307. According to that section,

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contracts (1981), When Mistake of One Party Makes a Contract Voidable, Section 153. Thus, unless the mistaken party bears the risk of a mistake, a court may rescind a contract if (1) one party made a mistake at the time the parties executed the contract, (2) the mistake had a material effect on the agreed exchange of performances that was adverse to the mistaken party, and (3) the other party had reason to know of the mistake. Id.; *Aviation Sales* at 93–94, 548 N.E.2d 307.

{¶ 25} As we concluded above, DEX presented evidence establishing that it made a mistake when it drafted and executed the severance agreement. Moreover, no one disputes that DEX's mistake had a material effect on the scope and extent of the performance required of DEX. Instead of necessitating the payment of only three months of severance, the severance agreement, as drafted, mandated the payment of 15 months of severance.

{¶ 26} Faivre, however, argues that DEX cannot avoid the severance agreement, because (1) he did not have reason to know of the mistake and (2) DEX bore the risk of the mistake. We find both arguments unavailing.

{¶ 27} First, we conclude that Faivre's deposition testimony establishes that he had reason to know that the severance agreement contained a mistake. "A person has reason to know a fact * * * if he has information from which a person of ordinary intelligence would infer that the fact in question does or will exist." Restatement (Second) of Contracts (1981), Section 19, Comment *b*. Faivre testified that, at the September 6, 2006 meeting, Kheel presented him with the severance agreement and reviewed the severance agreement with him. In the course of reviewing the severance agreement, Kheel stated that DEX was offering Faivre only three months of severance. Kheel also said that Faivre's severance would continue through November. During his later, more thorough review of the severance agreement, Faivre realized that it indeed extended his severance through November, but November *2007*, not November *2006*. Faivre understood that a three-month period of severance would end on November 30, 2006, and that the severance agreement, as written, would entitle him to severance payments for 15 months. Given the discrepancy between the verbal offer and the severance agreement, as well as the character of the error (the difference between a "6" and "7"), Faivre had reason to know that a mistake had occurred.

{¶ 28} Second, we conclude that DEX did not bear the risk of the mistake. Pursuant to Section 154 of the Second Restatement of Contracts:

A party bears the risk of a mistake when

. (a) the risk is allocated to him by agreement of the parties, or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts (1981), When a Party Bears the Risk of a Mistake, Section 154.

{¶ 29} Faivre does not advance any argument under subsection (b), and we do not believe that that subsection has any applicability to this case. Faivre, however, argues that DEX must bear the risk of the mistake because (1) it agreed to bear the risk in the integration clause and (2) DEX's negligence in drafting the severance agreement makes assigning the risk of the mistake to DEX reasonable.

{¶ 30} Under subsection (a), a party accepts the risk of a mistake if it agrees "to perform in spite of mistake that would otherwise justify [its] avoidance." Id. at Comment *b*. Here, nothing in the severance agreement provides that DEX will perform even if a mistake would warrant rescission. Faivre argues that DEX agreed to perform despite the mistake in the integration clause. However, the integration clause (if it applied) would only preclude evidence of a mistake; it does not indicate which party bears the risk of a mistake once a party proves that a mistake occurred.

{¶ 31} Subsection (c) is a "catchall provision" that permits a court to allocate the risk of a mistake to the mistaken party if, under the totality of the circumstances, it would be more equitable or reasonable to do so. *Aviation Sales,* 48 Ohio App.3d at 94, 548 N.E.2d 307. Here, Faivre contends that DEX should bear the risk of the mistake because its own negligence caused the typographical error. Again, we find Faivre's argument unpersuasive. " '[A] party's negligence is immaterial where the mistake is in the expression of the contract and the other party knew of the mistake and took advantage of it.' " *Mehlfeldt II,* quoting *Liezert v. Liezert* (Oct. 2, 1991), 9th Dist. No. 15031, 1991 WL 199912. As we concluded above, Faivre had reason to know that the severance agreement contained a typographical error. Instead of seeking clarification regarding the length of the severance period, Faivre attempted to take advantage of DEX's error. Therefore, equity and reasonableness do not require us to place the risk of the mistake on DEX due to its negligence.

{¶ 32} Because DEX satisfied the requirements of Section 153 of the Second Restatement of Contracts, it is entitled to rescission of the severance agreement. Accordingly, we conclude that the trial court did not err in denying Faivre summary judgment or in granting DEX summary judgment. We, therefore, overrule Faivre's assignments of error.

{¶ 33} For the foregoing reasons, we overrule Faivre's first and second assignments of error. However, because the trial court failed to grant DEX the appropriate relief, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court. On remand, the trial

court must grant DEX a rescission of the severance agreement and enter judgment in favor of DEX.

Judgment reversed<br>and cause remanded with instructions.

FRENCH, P.J., and SADLER, J., concur.