In re Thin T. DUONG and Sang
T. Pham, Debtors.

Thin Duong, et al., Plaintiffs,

v.

U.S. Bank, N.A. as Trustee for Merrill
Lynch First Franklin Mortgage Loan
Trust, et al., Defendants.

Bankruptcy No. 10–16084.
Adversary No. 10–1367.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

June 29, 2011.

Jonathan I. Krainess, Cleveland, OH, for Plaintiffs.

Barbara Friedman Yaksic, McGlinchey Stafford PLLC, Rose Marie L. Fiore, Cleveland, OH, Brittany L. Griggs, Graydon Head & Ritchey LLP, Cincinnati, OH, for Defendants.

Lorain County Treasurer, Elyria, OH, pro se.

### MEMORANDUM OF OPINION

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

This dispute centers on the amount of money owed by the plaintiff-chapter 13 debtors Thin Duong and Sang Pham under an agreement that modified a promissory note: does it, or does it not, include an obligation to pay $100,000.00 at the term end? The debtors say no, while the entity now entitled to enforce the note—defendant[1] U.S. Bank, N.A. as successor trustee to Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., as trustee for Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset–Backed Certificates, Series 2007–2 (U.S. Bank Trustee)—says yes.[2] As an alternative position, U.S. Bank Trustee asks that the contract be reformed to require that payment.

The parties submitted this matter for decision on stipulated facts and briefs.[3] For the reasons stated below, the court finds that the debtors are entitled to judgment on the complaint against U.S. Bank Trustee that they do not owe $100,000.00 at the term end, and that they are similarly entitled to judgment on the counterclaim brought against them that raises the same issue.

### I. JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the

---

1. Although the plaintiffs named a different entity in the Amended Complaint, the parties stipulated that U.S. Bank Trustee is the proper defendant. *See* Joint Pretrial Statement and Stipulations of Fact ¶ 3. Docket 14, 19.

2. U.S. Bank Trustee makes this same argument in its objection to the debtors' plan confirmation. Case No. 10–16084, docket 5, 14.

3. Docket 16, 18.

Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

## II. FACTS

The parties stipulated to these facts: [4]

1. Debtors Thin T. Duong and Sang T. Pham ("Debtors") are the fee simple owners of property located at 33887 Gilbert Court, North Ridgeville, OH 44037 (the "Property").

2. On March 15, 2007, Debtors entered into a loan (the "Loan"), evidenced by a Note (the "Note") and Mortgage ("Mortgage"). The Loan was in the principal amount of $260,000 and had an interest rate of 10.55% per year.

3. The Note and Mortgage are currently owned and/or held by U.S. Bank, N.A., as Successor Trustee to Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset Backed Certificates, Series 2007–2 ("U.S. Bank Trustee").

4. After Debtors defaulted on their repayment obligations under the original Loan terms, the Loan was modified, as evidenced by a Loan Modification Agreement dated June 30, 2009 and signed by the Debtors on July 11, 2009 (the "June Modification Agreement" [or June Agreement]) ... The New Total Interest Accruing Principal Balance in the June Modification Agreement was $171,283.50, and the interest rate was lowered to 6.55%.

5. Pursuant to [paragraph] 6 of the June Modification Agreement, "all terms and conditions of the [Note and Mortgage], and other loan documents relative to [the] Loan shall remain in full force and effect except as otherwise specifically modified herein."

6. According to the terms of the June Modification Agreement, $100,000 of the Loan Balance was deferred to the end of the Debtors' Loan, and Debtors agreed to pay that deferred $100,000 (the "Postponement Repayment Amount") at the time of their last installment payment on the Loan or at the time of a payoff of the Loan, whichever occurred first.

7. Due to an error in capitalizing the interest in the June Modification Agreement, Home Loan Services, Inc. *aka* First Franklin Loan Services ("HLS"), the prior servicer of the Loan, sent additional modification documents to Debtors to correct the calculation contained in the June Modification Agreement. In return for signing the revised Modification Agreement, Debtors' interest rate was further lowered, from 6.55% per year to 5.6% per year.

8. The second set of modification documents (the "December Modification Agreement" [or December Agreement]) were dated December 23, 2009 and Debtors signed the December Modification Agreement on December 24, 2009....

9. Pursuant to [paragraph] 5 of the December Modification Agreement, "all terms and conditions of the [Note and Mortgage], and other loan documents relative to [the] Loan shall remain in full force and effect except as otherwise specifically modified herein."

10. As compared to the June Modification Agreement, the December Modification Agreement modified the Interest Accruing Principal Balance of the Loan from $171,283.50 to $210,236.64, and lowered the interest from 6.55% to 5.6% per year.

---

**4.** Docket 19. Although the debtors included exhibits in their reply brief, the court has not considered them because they were not part of the stipulated facts.

11. There was never discussion between Debtors and HLS or U.S. Bank as Trustee concerning a waiver or forgiveness of the $100,000 Postponement Repayment Amount in the December Modification Agreement.

12. Debtors have made payments since the December Modification Agreement was signed. Those payments were accepted by HLS or U.S. Bank as Trustee and, per the terms of the December Modification Agreement, applied to the Debtors' account.

The June Agreement and the December Agreement are part of the stipulations. As to the note balance, the June Agreement states:[5]

Whereas, the current balance due and owing on the Promissory Note and Security Instrument is as follows:

| | |
|---|---|
| Principal: | $259,861.60 |
| Interest through 07/31/2009: | $ 11,421.90 |
| Less Mortgagor Contribution: | ($ 0.00) |
| New Principal Balance Subtotal | $271,283.50 |
| Less Suspense: | ($ 0.00) |
| Less Postponement Repayment Amount: | ($100,000.00) |
| * New Total Interest Accruing Principal Balance: | $171,283.50 |

* The Borrower's principal and interest amortization as set forth in this Modification Agreement will be based upon the Total Interest Accruing Balance. The Note Holder has agreed to postpone repayment on a portion of the Borrower's loan in the amount of $100,000.00, that additional amount which is also due on Promissory Note and Security Instrument. This postponed amount, while not accruing interest, or any additional fees, is still due and owing to the Noteholder, and will be added to the payoff figure in the event of a payoff of this loan. At the end of the monthly payments under this Modification Plan, the postponed amount will then be due as a lump-sum payment. Corporate advances such as prior attorney fees and costs and/or property inspections and late charges in the amount of $6,016.44, are also due on the Promissory Note and Security Instrument. This amount, while not accruing interest, or any additional fees, is still due and owing to the Note Holder and will be added to the payoff figure in the event of a payoff of this loan. At the end of the monthly payments under this Modification Plan, the additional corporate advances will then be due as a lump-sum payment.

The December Agreement, on the other hand, states:[6]

Whereas, the current balance due and owing on the Promissory Note and Security Agreement is as follows:

| | |
|---|---|
| Principal: | $198,683.51 |
| Interest through 12/31/2009: | $ 5,419.64 |
| Less Mortgagor Contribution: | ($ 2,866.51) |
| Less Suspense: | ($ 0.00) |
| New Principal Balance: | $201,236.64 |

Corporate advances such as prior attorney fees and costs and/or property inspections and late charges in the amount of $6,175.11, are also due on Promissory Note and Security Instrument. This amount, while not accruing interest, or any additional fees, is still due and owing to the Note Holder and will be added to the payoff figure in the event of a payoff of this loan. At the end of the monthly payments under this Modification Plan, the additional corporate advances will then be due as a lump-sum payment.

Both agreements identify the note holder as LaSalle Bank National Association as

5. Exh. A to Stipulations.

6. Exh. B to Stipulations.

Trustee for First Franklin Mortgage Loan Trust 2007–2, Mortgage Loan Asset–Backed Certificates, Series 2007–2 (La-Salle Trustee). The parties stipulated that Home Loan Services, Inc. aka First Franklin Loan Services, serviced the note at the time of the December Agreement.[7] Therefore, Home Loan Services acted as the servicer for LaSalle Trustee with respect to the December Agreement. Based on the stipulations, U.S. Bank Trustee is the successor to LaSalle Trustee with respect to the note, and the June and December Agreements. The relevant events all took place before U.S. Bank Trustee assumed this position.

## III. THE POSITIONS OF THE PARTIES [8]

The debtors' position is that they are not required to pay the $100,000.00 included in the June Agreement because the December Agreement changed the repayment provisions, including omitting that term. U.S. Bank Trustee argues that the debtors owe the money because: (1) the provision was incorporated by reference into the December Agreement; and, if not, (2) the prior servicer made a unilateral mistake in preparing the December Agreement, which contract should now be reformed to include the $100,000.00 term.[9] The parties agree that Ohio law governs these issues.

---

**7.** Stipulation ¶ 7.

**8.** Docket 20, 21, 22. The amended complaint also names the Lorain County Treasurer as a defendant. That defendant did not answer or otherwise respond to the amended complaint.

**9.** U.S. Bank Trustee's answer and counterclaim raise two additional issues. First, that the agreement should be reformed due to mutual mistake. U.S. Bank Trustee did not

## IV. DISCUSSION

### A. Does the December Agreement Incorporate the June Agreement Term that the Debtors Owe an Additional $100,000.00?

The interpretation of an unambiguous contract is a matter of law. *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 565 (6th Cir.2006) (citing *Long Beach Ass'n, Inc. v. Jones,* 82 Ohio St.3d 574, 697 N.E.2d 208, 209–10 (1998)). Under Ohio law,

"the court's paramount objective is to ascertain and give effect to the parties' intention." *Rosepark Prop., Ltd. v. Buess,* 167 Ohio App.3d 366, 375, 855 N.E.2d 140 (2006) (citing *Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co.,* 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989)). The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Kelly v. Med. Life. Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411, syllabus ¶ 1 (1987). When contract terms are unambiguous, the courts will not, in effect, create a new contract by finding an intent not expressed in the clear contractual language. *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

*Menninger v. Accredited Home Lenders (In re Morgeson),* 371 B.R. 798, 804 (6th Cir. BAP 2007). "Where one instrument incorporates another by reference, both must be read together ... Courts should

---

address this in its brief. And second, that the debtors should be required to comply with the terms of an errors and omissions/compliance agreement. The stipulations do not provide facts to support that claim. The court deems both arguments to be abandoned. Similarly, the debtors argue in their brief that U.S. Bank Trustee acted negligently, but the stipulations do not address that factual issue in enough detail to permit the court to analyze it.

attempt to harmonize provisions and words so that every word is given effect." *Christe v. GMS Mgmt. Co.*, 124 Ohio App.3d 84, 705 N.E.2d 691, 693 (1997) (citations omitted).

■ U.S. Bank Trustee points out that the December Agreement states that all terms of related documents, including the June Agreement, remain in effect except as specifically modified by the December Agreement.[10] This provision, it contends, means that the December Agreement incorporates the June Agreement provision which stated that "[t]he Note Holder has agreed to postpone repayment on a portion of the Borrower's loan in the amount of $100,000.00, that additional amount which is also due on [the] Promissory Note and Security Interest." This argument fails because the December Agreement specifically modifies the amount owed and the terms under which it will be repaid, in this fashion:

- The term "Postponement Repayment Amount" does not appear in the December Agreement;
- The $100,000.00 included in the June Agreement's calculation of the balance due does not appear in the December Agreement;
- The December Agreement states a different principal balance than the one stated in the June Agreement;
- The December Agreement requires a contribution from the debtors, while the June Agreement did not;
- The December Agreement has a different corporate advance amount than that found in the June Agreement; and
- The December Agreement deletes the reference to the total interest accruing on the principal balance that is found in the June Agreement.

Consequently, the provision in the December Agreement that incorporates all terms and conditions of the June Agreement that are not specifically modified cannot be read to insert the $100,000.00 term into the December Agreement. The payment terms *were* specifically modified by the December Agreement, and the $100,000.00 term is not a part of that agreement.

## B. *Is U.S. Bank Trustee Entitled to an Equitable Remedy Based on the Unilateral Mistake Doctrine?*

■ In some circumstances, a party to a contract who makes a unilateral mistake in entering into the contract is permitted to avoid the mistake either by rescinding the contract or by reforming it to reflect the actual intent of the parties when they entered into the contract. U.S. Bank Trustee's alternative argument is that the $100,000.00 provision was omitted due to the prior servicer's unilateral mistake, and the contract should be reformed to insert that term.

■ Under Ohio law:

"A unilateral mistake occurs when only one party has an erroneous belief as to the facts. (In a sense, of course, even in a case of unilateral mistake, both parties are mistaken: one is mistaken as to some fact and the other is mistaken in thinking that the first party is not mistaken)." 2 Farnsworth on Contracts (2 Ed. 1998) 585–586, Section 9.4. In cases of unilateral mistake, "one party recognizes the true effect of an agreement while the other does not." *Gen. Tire, Inc. v. Mehlfeldt* (1997), 118 Ohio App.3d 109, 115, 691 N.E.2d 1132.

*425 Beecher, L.L.C. v. Unizan Bank, Nat'l Ass'n*, 186 Ohio App.3d 214, 927 N.E.2d 46,

**10.** Stipulation ¶ 9.

53 (2010). The party asserting unilateral mistake must prove it by clear and convincing evidence. *Gartrell v. Gartrell,* 181 Ohio App.3d 311, 908 N.E.2d 1019, 1022 (2009). Courts may consider parol evidence of a mistake. *Faivre v. DEX Corp. Northeast,* 182 Ohio App.3d 563, 913 N.E.2d 1029, 1034–35 (2009).

▆ Ohio courts refer to the Restatement of Contracts on the issue of unilateral mistake. *425 Beecher, L.L.C.,* 927 N.E.2d at 55; *Faivre,* 913 N.E.2d at 1035; *Aviation Sales, Inc. v. Select Mobile Homes,* 48 Ohio App.3d 90, 548 N.E.2d 307, 310–11 (1988). Under the Restatement, a mistake is defined as "a belief that is not in accord with the facts." RESTATEMENT (SECOND) OF CONTRACTS § 151 (1981). The erroneous belief must relate to facts as they exist at the time the contract is made; a party's erroneous belief as to either the contents of the contract or its effect is a mistake. *Id.* at cmt. a. A party's unilateral mistake makes a contract voidable:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

RESTATEMENT (SECOND) OF CONTRACTS § 153 (1981). A party to a contract bears the risk of the mistake under § 154 of the Restatement when:

> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981).

The questions, therefore, are:

1. Did the prior servicer make a mistake in drafting the December Agreement;

2. If so, should the court allocate the risk to U.S. Bank Trustee, as successor to LaSalle Trustee;

3. If not, did U.S. Bank Trustee prove that it is entitled to an equitable remedy; and

4. If so, should the remedy be to rescind the contract or to reform it?

### 1. *Did U.S. Bank Trustee Prove that there is a Mistake in the December Agreement?* [11]

▆ While the terms of the December Agreement differ in many ways from the terms of the June Agreement, there is actually no evidence that deleting the $100,000.00 term was a mistake. Under the Restatement, a mistake is "a belief that is not in accord with the facts." Because the prior servicer prepared the De-

11. U.S. Bank Trustee argues that the debtors have the burden of proof based on a statement in the court's scheduling order. That order simply identifies the order in which the parties were to file their briefs and is not a finding as to the legal standard for the burden of proving that a contract should be rescinded or reformed. The legal standard is as set forth above.

cember Agreement, and because the servicer was acting on behalf of LaSalle Trustee at the time, U.S. Bank Trustee must show that the servicer had a belief that was not in accord with the facts.[12] What is the belief here that is not in accord with the facts? The only stipulation as to error is that the servicer sent the debtors the December Agreement to correct an error that it made earlier in capitalizing the interest. There is no evidence from the servicer that it mistakenly omitted the $100,000.00 when it re-analyzed the contract and drafted the December Agreement with its numerous changes from the June Agreement. It is not enough for U.S. Bank Trustee as the current note holder to *think* that the $100,000.00 should have been included with those other changes and that the debtors would have agreed to all of the new terms; the burden is on U.S. Bank Trustee to *prove* it by clear and convincing evidence. *See, for example, 425 Beecher LLC*, 927 N.E.2d at 56–57 (individual who drafted the challenged document testified as to circumstances surrounding the error). U.S. Bank Trustee did not meet this burden, as a result of which the doctrine does not apply.

2. ***Assuming that U.S. Bank Trustee Had Proved that the Servicer Made a Mistake, Is it Reasonable Under the Circumstances to Allocate the Risk of Mistake to U.S. Bank Trustee?***

■ In considering whether to allocate the risk of mistake to the party who made the mistake, the question is whether "under the totality of the circumstances, it would be more equitable or reasonable to do so." *Aviation Sales, Inc.*, 548 N.E.2d

at 311. Here, relevant factors include who drafted the agreement, the relative sophistication of the parties, any communications the parties had concerning the proposed agreement, and the effect of the error on the parties. In this case, U.S. Bank Trustee admits that the prior servicer for LaSalle Trustee drafted the agreement that contains the claimed mistake. As between these debtors and a commercial entity specializing in providing loan collection services to lenders, it is clear that the servicer had superior knowledge and information about the loan transaction and any terms related to it. There is no evidence that the debtors initiated, negotiated or changed the December Agreement, and the stipulations confirm the lack of communication. The court finds under the facts of this case that it is reasonable to allocate the risk of mistake to U.S. Bank Trustee. U.S. Bank Trustee, therefore, is not entitled to a remedy to correct the unilateral mistake in the note.

3. ***If the Risk of Mistake is Not Allocated to U.S. Bank Trustee, Did U.S. Bank Trustee Prove that it is Entitled to an Equitable Remedy?***

■ If the mistaken party is not required to bear the risk of the mistake under § 154, a contract is voidable if one party made a mistake at the time the contract was entered into, the mistake had a material effect on the agreed exchange of performances that was adverse to the mistaken party, and the other party had reason to know of the mistake, caused the mistake, or the effect of the mistake makes enforcement of the contract unconscionable.

U.S. Bank Trustee again argues that the prior servicer mistakenly omitted the

12. Compare this, for example, with any argument U.S. Bank Trustee may have in another context and forum that it mistakenly thought

when it became entitled to enforce the note that the terms included a $100,000.00 provision.

$100,000.00 term from the December Agreement. Again, however, as discussed above, the facts do not support that position.

Second, it is not clear that the omission of the $100,000.00 provision had a material effect on the agreed exchange of promises that was adverse to LaSalle Trustee. U.S. Bank Trustee suggests that it is as straightforward as saying: without the mistake, the entity with the right to enforce the note is entitled to an additional $100,000.00 and with the mistake the entity is not entitled to the funds. This is not, however, the case because the June Agreement and the December Agreement differ in many respects other than the $100,000.00 issue. Moreover, there is no evidence as to the economic value to either party of the June Agreement compared to the economic value of the December Agreement.

Additionally, even if this court had sufficient facts and concluded from them that the servicer erred in omitting the provision and that the error had the required material effect, U.S. Bank Trustee failed to show by clear and convincing evidence either that (1) the debtors had reason to know of the mistake or caused it; or (2) the effect of the mistake makes enforcement of the December Agreement unconscionable. U.S. Bank Trustee's argument that the debtors "were aware or should have been aware ... and were attempting to take advantage of [the] fact that the December Agreement did not have the $100,000.00 term" is not supported by the evidence. The facts presented are these: the servicer sent the debtors a loan modification in June and they signed it. The servicer decided that the June modification contained an error, so it sent another modification to the debtors in December and the debtors signed it. There is no evidence that the debtors knew or should

have known that either the June or the December Agreement contained or omitted a provision contrary to the servicer's intent.

U.S. Bank Trustee also argues that the December Agreement is patently unfair and would yield a windfall to the debtors, thus making it unconscionable to enforce it. The Restatement provides on this point that:

> The mistaken party bears the substantial burden of establishing unconscionability and must ordinarily show not only the position he would have been in had the facts been as he believed them to be but also the position in which he finds himself as a result of his mistake.

RESTATEMENT § 153 cmt. c. There is no evidence as to the facts as perceived by the servicer for LaSalle Trustee when it sent the December Agreement to the debtors. Nor is there any evidence that the debtors would have elected to· sign the December Agreement if it had included the $100,000.00 provision with the other changes. It is possible that the debtors might have decided not to sign it, choosing instead to hold the noteholder to the June Agreement. U.S. Bank Trustee did not, therefore, meet its substantial burden of showing that it is unconscionable to enforce the December Agreement.

In sum, U.S. Bank Trustee failed to prove that the servicer made a unilateral mistake and that U.S. Bank Trustee as the entity currently entitled to enforce the note should be relieved from the consequences of that mistake.

### 4. *If U.S. Bank Trustee Had Met its Burden, Is the Appropriate Remedy Reformation or Is it Rescission?*

Finally, the court notes that even if U.S. Bank Trustee had proven that the servicer made a unilateral mistake and that U.S.

Bank Trustee is entitled to remedy the error, the remedy in similar situations generally is to rescind the contract rather than to reform it. *See Faivre*, 913 N.E.2d at 1036. This is because the purpose of reformation is to make the contract reflect the actual agreement of the parties; if the parties did not have an agreement, the court cannot make one for them. *Id.* Here, U.S. Bank Trustee seeks reformation rather than rescission, without addressing why reformation is available to remedy a unilateral mistake. The court does not, however, have to resolve that issue in light of its other conclusions.

## V. *CONCLUSION*

For the reasons stated, the debtors are entitled to judgment against U.S. Bank Trustee on the amended complaint finding that the December Agreement did not incorporate the $100,000.00 postponement repayment provision of the June Agreement. Additionally, as U.S. Bank Trustee failed to prove that the omission of the provision resulted from unilateral mistake that warrants reformation of the contract, the Debtors are entitled to judgment on U.S. Bank Trustee's counterclaim. A separate judgment will be entered to reflect this decision.

## *JUDGMENT*

For the reasons stated in the memorandum of opinion entered this same date, the plaintiff-debtors are granted judgment against U.S. Bank, N.A. as successor trustee to Bank of America, N.A., as successor by merger to LaSalle Bank, N.A., as trustee for Merrill Lynch First Franklin Mortgage Loan Trust Mortgage Loan Asset–Backed Certificates, Series 2007–2 (U.S. Bank Trustee) on the amended complaint finding that the December Agreement did not incorporate the $100,000.00 postponement repayment provision of the June

Agreement. Additionally, the plaintiff-debtors are granted judgment against U.S. Bank Trustee on its counterclaim as U.S. Bank Trustee failed to prove that the contract should be reformed. The plaintiff-debtors' claims against the Lorain County Treasurer are dismissed.

IT IS SO ORDERED.